The questions involved in the decision of this cause, are,
1st. Whether the provisions of the revised statutes (2 R.S. 100), in relation to the sale of real estate for the payment of debts by the order of surrogates' courts, authorize the sale of the widow's dower, where it has been actually assigned to her, by the decree of some competent court?
2d. If it does authorize the sale under such circumstances, then, is the statute constitutional, within the prohibition of the 10th section of the 1st article of the constitution of the United States?
These questions are of grave importance; and demand from the court, as they have received from the counsel who have argued them, the fullest consideration. Prior to the revised statutes of 1830, there was no statute in this state which professed to interfere with or impair the widow's dower in the real estate of a deceased debtor, for the payment of debts. The dower interest of the widow had been considered as paramount to the claims of creditors. No act, deed or conveyance, executed or performed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof, in the manner required by law to pass the estates of married women, and no judgment or decree confessed by, or recovered against him, and no laches, default, covin, or crime of the husband, was allowed to prejudice the right of his wife to her dower, or jointure, or preclude *Page 247 
her from the recovery thereof. And by the act of January 26, 1787, it was enacted: "for her dower, shall be assigned to her the third part of all the lands of her husband, which were his, at any time during the coverture."
Thus stood the law, until the revision of the statutes in 1830, when the revisers evidently intended to compel the widow of a deceased debtor whose real estate it became necessary to sell in order to pay debts, to accept in lieu of her dower interest in the land itself, the use of one third of the purchase money which it would command on a sale by the order of the surrogate. But whether the legislature intended to authorize the sale of lands already assigned for dower, or where the inchoate right had become vested by marriage and seizin of the husband prior to the act, is left in great doubt, by the ambiguous language used. The argument of the counsel for the defendant, so far as it depends upon the statute itself, is, that by the second section of the act, the petition for an order to sell, must set forth a description of all the real estate of which the testator, or intestate, died seized, without excepting any which may have been assigned as dower — that by the 5th section, the surrogate's order directs all persons interested in the estate to show cause against the sale — that by the 6th section, a copy of the order to show cause must be personally served on every person in the occupation of the premises, and on the widow of the deceased — that by the 19th section, if the whole of the real estate shall be necessary to be sold for the payment of the debts, it may be ordered accordingly — that by the 31st section, the effect of the sale is declared to be "to convey all the estate, right, and interest in the premises, of the testator or intestate, at the time of his death, free and discharged from all claim for dower of the widow of such testator or intestate" — that by the 36th section, the surrogate is directed to pay out of the proceeds of each sale, 1st, the charges and expenses of the sale; 2d, he shall next satisfy any claim of dower, which the widow of the testator or intestate may have upon the lands so sold, by the payment of a sum in gross, c. — and finally, it was contended that the interests of the widow in the land should not be allowed to depreciate the *Page 248 
price which the land would bring in the market, to the prejudice of creditors, the payment of whose debts might depend upon the lands being sold unincumbered with the claim of dower, whether actually assigned to her, or not.
We are of opinion that the provisions of the statute may all be satisfied, without including within the power of the surrogate, the sale of dower after it is actually assigned; and that the construction of the act contended for would lead to great absurdities and hardships, which no legislature can be presumed to have intended. The fact that the petition for an order of sale is required to contain a description of all the real estate of which the testator died seized, does not indicate the interest
intended to be sold, nor the quantity of land; because it is quite uncertain at that stage of the proceeding whether the surrogate will order a sale, or a lease, or a mortgage; either of which it is competent for him to do. But if a lease, or mortgage, is ordered, it is not pretended that the widow's dower is affected, whether assigned to her, or not. Nor is the argument derived from the fact that notice is required to be served upon the widow to show cause against a sale, lease, or mortgage, by the 5th, 6th, and 7th sections of the act, entitled to any greater consideration. Those sections require a like notice to be served on every occupant of the land, as well as upon the widow and heirs. But it will not be pretended that a lessee of the husband whose term has not expired, or an adverse occupant on whom notice is served, can be prejudiced by the proceedings. The 19th section of the act does not profess to confer upon the surrogate any more power in respect to the extent of the sale, or the quantity, than was conferred by the 23d section of the act of 1813 (1 R.L. 451); and it was not pretended, under that statute, that the widow's dower was affected by such sale.
The 31st section of the act declares the conveyance of the land to be free and discharged from all claim for dower; and the 36th section authorizes the payment of a gross sum in satisfaction of any claim of dower, if she elects to receive it, and if not, the 37th section directs the surrogate to set apart one-third of the purchase money to satisfy such claim,
and to cause the same to be invested in permanent securities on annual interest, *Page 249 
in his name of office, which interest shall be paid to suchclaimant during life. The expressions "claim of dower," "claim," and "claimant," in describing the interest intendedto be satisfied, and the description of person whose claim is to be extinguished by payment in money, instead of land, are all inappropriate when applied to an estate in dower, or a tenant in dower; but are all quite appropriate when applied to a claim ofdower, while it remains a chose in action. But where lands are assigned to a widow as her dower in the lands of her husband, herclaim is extinguished, and such assignment may be plead in bar of any further claim of dower by the heir of such husband, or any grantee of such heir, or any grantee of such husband. (2R.S. 743, § 23.)
All the sections of the statute in question above cited are satisfied, by confining their operation to the case where the widow's interest remains a mere claim. But there are other provisions which demand that those sections should be thus limited, if they could otherwise bear a more extended construction. The 32d section declares that every sale and conveyance made pursuant to the provisions of this title, shall be subject to all charges, by judgment, mortgage, or otherwise,
upon the land so sold, existing at the time of the death of the testator or intestate. Now, if dower, although assigned, may be sold, it is placing the judgment and mortgage creditors in a better position than the widow, whose claim is paramount to theirs in every respect. But it may be that the charge on the land otherwise than by judgment or mortgage, and subject to which the land is sold by the 32d section, is the charge of dower when duly assigned before sale. It is difficult to surmise any other charge more meritorious or sacred in the eye of the law. Again: The 32d section requires the land to be sold subject to all charges by mortgage, judgment, or otherwise; and the 37th section allows to the widow only the interest on one third part of the purchase money as a satisfaction of her dower. The consequences of such a construction as is contended for, will be, that the widow must take her dower in subordination to the debts of her husband, if secured by mortgage or judgment; and diminished *Page 250 
by the amount of those charges; and if those charges are to the full value of the land, she will get nothing.
That the statute did not intend to include in the surrogate's order of sale the lands assigned to the widow for dower, derives confirmation from the fact that in the statute regulating the partition of real estate, (2 R.S. 317, § 6,) widows whose dower has been admeasured, are not to be made parties. So, in the proceedings for the sale of infants' estates, (2 R.S. 196, § 187,) the widow's dower right cannot be sold, unless she shall consent thereto, in writing; and it would seem that if the interests of any persons should be consulted in determining whether a sale of lands free from incumbrance of dower should be had, it is where infants are concerned.
The above considerations are sufficient, in the opinion of a majority of the court, to determine the cause in favor of the plaintiff in error.
But there is another reason, in my opinion, for limiting the operation of the act in question, to cases of marriage occurring after the first of January, 1830, more potent than any of those above rendered. It is, that if the act should be construed to include the cases of dower, where the marriage and seizin of the husband occurred prior to the passage of the act, it would be void by the provisions of the 10th section of the first article of the constitution of the United States. That section declares that no state shall pass any law impairing the obligation of contracts; and as the widow's right to dower is a right acquired by the marriage contract, and one of the benefits promised to her by the law of the contract, in consideration of her entering into that relation, it comes fairly within the letter and spirit of the prohibitory clause of the constitution, as a contract which cannot be impaired by subsequent legislation.
The right of dower attaches at the instant of the marriage, and cannot be defeated by the alienation of the husband alone. (1Cruise's Dig. 136.) In the case of Kelly v. Harrison, (2John. Cas. 29,) the principle was established, that by the marriage and seizin of the husband, the wife's right to dower became a vested right, and could not be impaired by the subsequent acts of the government, and of course not by subsequent legislation. *Page 251 
Mr. Justice Kent says, "By the marriage the widow was capable of being endowed of lands purchased by the husband at any time during coverture, but the right could not attach till the land was purchased, and I distinguish between the capacity toacquire, and the vested right. The revolution took away the one, and did not impair the other." So, in Jackson v.Edwards, (22 Wend. 498,) the same principle is recognized by Senator Verplanck.
The English parliament, although unrestrained by constitutional limitations, deemed the right to dower so far vested, by marriage, that in a recent enactment, in which they virtually abolish dower, (see 3 4 W. 4, ch. 105, passed Aug. 29, 1833,) a special clause is inserted declaring that said act shall not extend to the dower of any widow, who shall have been, or shall be married, on or before the 1st day of January, 1834. Thus sanctioning, by parliamentary authority, the primary rule for the interpretation of statutes, which the English courts have adhered to with commendable firmness, "Nova constitutio futuris formamdebit imponere non præteritis."
The 16th section of our statute concerning dower, (1 R.S. 742,) places the wife's claim on the same basis as that of jointure. She cannot be barred or prejudiced by any act, in the one case, which would not prejudice the other. A jointress is considered a purchaser; marriage alone being considered a valuable consideration; and by the English law dower was not forfeited by the commission of adultery. But here, it is otherwise, by statute. (1 R.S. 734, § 15; 1 Cruise's Dig. 156, § 1.) In Sutliff v. Forgey, (1 Cowen's R. 89; 5 id. 713, in error,) it was decided, that the widow of an alien, who was herself an alien, was entitled to dower as a purchaser. So, a deed of lands to the husband will not be set aside for fraud,
where it was an inducement to a subsequent marriage, because marriage forms a valuable consideration. (Verplanck v.Sterry, 12 John. 536; 3 Cowen, 537.) In the case ofDartmouth College v. Woodward, (4 Wheat. 538,) it was impliedly admitted by Chief Justice Marshall, and expressly asserted by Mr. Justice Story, that the marriage contract itself was within the constitutional protection. *Page 252 
The contract of marriage, and the wife's right to dower as a right springing out of that contract, being within the protection of the constitution, it remains to be seen whether that right would be affected, or impaired, by the act authorizing it to be sold by the surrogate, whether assigned to her, or not? This is best answered by a brief statement of the widow's rights, before and after the passage of the act under discussion. By the marriage in 1799, and the seizin of the husband prior to 1830, Mrs. Lawrence, in case she survived her husband, became entitled to the possession and use of one third of those lands,specifically, during her life. This dower right could not be sold by any court, and she be obliged to accept of the interest
of one third of the purchase money. Now the act authorizes the surrogate to order the sale thereof, on the petition of the administrator, or creditor, and subject to all liens, by judgment and mortgage, and the widow is compelled to accept of one third of the purchase money, and if the incumbrance is equal to the value of the land, she gets nothing. The time and manner of sale, the credit to be given to the purchaser, and the kind of securities to be taken, and the custody thereof, are all placed beyond her control. If these modifications of her previous rights, and even destruction of them, do not impair, or render them less valuable than they were before the act, it would be difficult to frame enactments that would, short of an absolute repeal of the dower right. The cases of Bronson v. Kinzie, (1How. R. 311;) McCracken v. Hayward, (2 id. 608,) in the supreme court of the nation, and the case of Quackenbush v.Danks, (1 Denio, 128,) in the supreme court of this state, declare the rules which should be applied to this case. Those rules are, that the law of dower, which existed at the time of the marriage and seizin of the husband, is the law of the contract which they entered into, and that the courts should give such a construction to subsequent state legislation, if possible, as not to make it conflict with constitutional provisions.
The defendant's counsel argued, that the substitution of money, for land, was equally valuable to the widow, and therefore her rights were not impaired. But if the mortgage, or judgment lien, subject to which the land is sold, can, by any *Page 253 
fair construction, be taken as a part of the purchase money, out of which the widow's third is to be deducted; and if the land will bring its fair value on the sale, (which is very improbable,) the widow is deprived of the right of electing for herself, which she will have, the money or the land. This right of election is one of great value in itself, and has been secured to the widow in almost every other instance, in which her dower right has been attempted to be interfered with. In the case of exchange of lands by the husband, his widow has one year in which to elect whether she will take her dower in the landsgiven or received in exchange. So, in the case of ajointure, or pecuniary provision made for the benefit of the wife, in lieu of dower, she has a right to elect, whether she will take her dower or the jointure. So, in proceedings for the sale of infants' estates, (2 R.S. 122, § 18,) the statute allows the widow to elect to take her dower in the specific land, or the interest on one third of the purchase money.
These instances are sufficient to show that the law esteems the right of election, as it in fact is, a valuable right. But if the statute in question is to have the construction given to it contended for by defendant's counsel, it comes like a tyrant, and cuts off the widow's power of choice, drives her to incur the hazards of a sale at a time beyond her control, and obliges her to accept the chance price of her impaired rights, as an equivalent for those certain and valuable ones secured to her by the law of the contract, at the time that contract was made. Just legislation never perpetrates such an outrage; and courts should protect the supreme power of the state from the imputation, by applying to its acts those benign rules of construction above indicated.
My own opinion is, that the act is wholly prospective in its operation, and has no application to cases where the marriage and seizin of the husband both happened prior to its passage. But the majority of the court place the decision of this case upon the ground, that the dower had been assigned to Mrs. Lawrence, previous to the surrogate's order of sale, and do not pass upon the question of the constitutionality of the act. *Page 254 
The judgment of the superior court should be reversed, and a new trial ordered.