J. Hermon McLear, Respondent, v. Joseph Balmat and Others, Defendants, Impleaded with Dominion Company and Others, Respondents, and Northern Ore Company and Others, Appellants.

Third Department, January 5, 1921.

Partition — direction for sale free from leases of mineral rights — provision in judgment for dower interest — covenant in assignment of lease of mineral rights not to exercise option of purchase without written consent of assignors — when answer in partition need not be served on another defendant — when defendant not entitled to notice of appeal — right of tenant in common to convey — payment into court not necessary in order to exercise option by lessee to purchase — motion for leave to pay tender into court and to amend answer.

In an action for partition, *held*, that under the circumstances a sale and distribution of the proceeds of mineral rights reserved in a farm should be made subject to certain leases of such rights, and that the lessees should not be compelled to lose the expensive improvements which they have placed upon the property.

A dower interest, until it is admeasured, is deemed a chose in action rather than an interest in the land itself, and can be cared for in a judgment of partition.

A covenant in an assignment by one of the lessees of the said mineral rights that the assignee would not surrender the leases or exercise an option of purchase contained therein without the written consent of the assignors did not preclude the assignee from exercising the option without the consent of the assignors, as against the heirs to the property, especially where the assignors are parties to the action and upon the trial thereof offered to pay the balance of the purchase price.

An answer in partition need not be served upon another defendant unless it controverts the title or interest of that defendant " as stated in the complaint."

A defendant who is not interested enough in an action to appear cannot object if a judgment in his favor is reviewed without notice to him.

One tenant in common can only convey such rights as he has and his grantee is confined to such rights. A tenant in common cannot sell his interest in the entire property and avoid the conveyance.

In the aforesaid action, it was error for the trial court to determine that the option of one of the lessees to purchase was not exercised because of its failure to pay the money into court, and its motion for leave to pay its tender into court and to amend its answer should have been granted.

The tender of the payment was simply the act of a party indicating its acceptance of an option and an attempt by it to perform its conditions, and, therefore, no payment of the money into court was necessary and the provisions of the Code of Civil Procedure relating to tender have no application.

APPEAL by the defendants, Northern Ore Company and others, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of St. Lawrence on the 5th day of May, 1920, adjudging the partition and sale of certain real property.

Also an appeal by the said Northern Ore Company from an order of the Supreme Court, made at the Fulton Special Term and entered in the office of the clerk of the county of St. Lawrence on the 10th day of May, 1920, denying said defendant's motion for leave to pay a tender of $500 into court, and to amend its answer by alleging that fact and to reopen the trial for the purpose of making proofs in accordance with such amendment.

*George E. Van Kennen,* for the appellants International Pulp Company and another.

*Earl Bancroft* [*Francis E. Cullen* of counsel], for the appellant Northern Ore Company.

*George W. Parker* [*Herbert G. McLear* of counsel; *Arthur W. Orvis* with him on the brief], for the plaintiff.

*McLear & McLear* [*Luke D. Stapleton, Herbert G. McLear* and *Robert E. McLear* of counsel], for the respondents Dominion Company of New York and others.

*Dallas M. Hazelton,* respondent, in person.

*Frederic S. Marsell,* for the respondent Green Hill Mining Company, Inc.

*James B. Emerick,* for the infant respondents Mayne.

Jᴏʜɴ M. Kᴇʟʟᴏɢɢ, P. J.:

The judgment in this partition action directs the sale and distribution of the proceeds of the mineral rights reserved

in the John D. Balmat farm, of about 169 acres, in the town of Fowler, N. Y. Concededly an actual partition cannot be had. The appellants, the pulp and talc companies, feel aggrieved because the sale is free from their so-called leases of the talc, talcous rock and soapstone, or similar substances; the ore company complains because its so-called leases and options to purchase the other mineral rights were ignored, the court holding that the tender of the earnest money under the options was ineffectual because not brought into court and alleged in the answer; it also complains of the denial of its motion for leave to pay the tender into court, to amend its answer alleging that fact and for leave to reopen the trial for that purpose.

John D. Balmat, at his death in 1862, owned the farm, subject to a mortgage. It passed, under his will, to his wife and his thirteen children, subject to said mortgage. In 1883 the mortgage was foreclosed and the property purchased by Charles Anthony, and in 1886 he sold and conveyed it to David H. Balmat who was one of the thirteen children of John D. Balmat. In 1889 David H. Balmat conveyed the farm, reserving, however, the ores, mines and minerals, and the right to dig and carry away the same. On September 3, 1892, he executed, with the American Talc Company, a so-called mineral lease under seal, duly acknowledged and witnessed, transferring to it and its assigns the right to remove the talc, talcous rock, soapstone and similar substances, for a period of twenty years from the 15th day of October, 1910, at a royalty of eighty cents per ton, the minimum royalty being $1,500 per year, payable quarterly, with the right to the company to terminate the grant by a written surrender or release executed in form for recording in the county clerk's office and the payment of all arrearages of royalties. This lease was duly recorded in the county clerk's office September 16, 1892, and by mesne transfers the International Pulp Company has succeeded to the rights of the American Talc Company. In 1903, in an action between the heirs of John D. Balmat, it was adjudged that the said David H. Balmat held said mineral rights as trustee for said heirs and their successors. By an instrument dated October 15, 1910, between all the heirs at law of John D. Balmat and their successors in interest

except as hereinafter mentioned, of the first part, and the Union Talc Company, of Gouverneur, of the second part, the said company was given the right to dig and carry away the talc and soapstone from said premises for a period of twenty years from the 15th of October, 1910, the lease being similar to the lease executed between said John D. Balmat and the American Talc Company (but with a smaller royalty), except that it provided that it superseded that lease, referring to its record, and recited " the parties of the first part having succeeded to the interest of said David H. Balmat therein and the party of the second part to the interest of said American Talc Company therein and said lease is hereby cancelled and is surrendered by the party of the second part." This instrument does not have upon it, either in the description of the parties or in the signatures, the names of Rosalie A. Smith, who was the owner of a one-thirteenth interest in said mineral rights, of Etta P. Fisher, Ophelia M. Benjamin and Edgar A. Carr, children of Andrew Carr, deceased, each owning an undivided one two-hundred-sixtieth interest, nor of Celia Woodcock, the widow of Louis Balmat. He died in 1873.

The complaint is the usual one in partition and alleges that the International Pulp Company and the Union Talc Company, or both, are engaged in mining talc on the premises under the lease given by David H. Balmat to the American Talc Company September 3, 1892, referring to its record, which by mesne conveyances is now owned by the International Pulp Company, or under a lease or written instrument which is not recorded, but which will expire on or about October 15, 1930, as the plaintiff is informed and believes, and which lease is executed by only a part of the owners of the mines and minerals therein described. It then alleges that the International Pulp Company and the Union Talc Company, one or both, claim to be entitled to a lease of all interest in the talc, talcous rock, asbestos and soapstone in and under said premises, for the period of twenty years, ending October 15, 1930, the precise nature and amount of the same being dependent upon unrecorded instruments and are unknown to the plaintiff. It then states the rights and interests of the parties as " subject to such leasehold interest."

The said Rosalie A. Smith swears that when the lease of

October 15, 1910, was presented to her for signature, she and her husband talked it over, discussed the royalties and its terms and that she directed him to execute it for her and in her behalf; that he went away with the lease to execute it and returned, saying they had signed it, and that thereafter she had regularly received the royalties thereunder. Bower M. Carr was the brother of the other Carr heirs mentioned, and swears that he signed the lease in behalf of all the Carr interests and that thereafter he collected the royalties due himself and his sisters and brother and paid them each year their proportion thereof. This evidence is undisputed. When the Dominion Company took its conveyance from Rosalie A. Smith, during the pendency of this action, the business was done in its behalf by the plaintiff and his brother, forming the firm of McLear & McLear, who are officers and apparently the active forces in the Dominion Company, the Green Hill Mining Company and the Sylvia Lake Company. Before they paid the consideration they took from her an affidavit stating that she was the owner of a one-thirteenth interest in the mines and minerals of the farm and " I have never executed any talc lease to any one of the talc deposits on said John D. Balmat farm, or any part thereof, and I have no knowledge of the contents of any lease that may have been executed by any one covering the talc on said premises, if such a lease has ever been executed. I have never had any information as to any arrangement under which any money has been paid by any one who has operated such talc mine or mines, if they have been operated, or under which any money was paid to the owners of such talc mines as royalties under any contract, lease or otherwise, except I have received money from time to time from DeAlton Balmat." The affidavit is evasive, but when read in connection with the known facts its purpose and intent is clear. It did not fool them; neither can it fool any one who reads the record. When Rosalie A. Smith was asked to sign the affidavit, it was read over to her and she objected to the statement in it that she had never received any money, and the affidavit was then put in its present form. The parties made no inquiry as to why she received the money from Balmat, or, if the moneys were not on account of royalties, why she

wanted them stated in the affidavit. Her position made it plain to them that royalties had been paid to her; a proper inquiry would have resulted in a knowledge of all the facts, but no such inquiry was made. The parties dealing with her were not seeking the facts, but rather to conceal them. DeAlton Balmat, who had paid her the moneys from time to time, was the man who received and disbursed the royalties under the leases.

At the time of the taking of the deed, the Dominion Company and the McLears knew that the International Pulp Company was actively mining talc on said premises, and had been for a great many years, and had made extensive improvements in opening and operating said mine. They knew from the complaint in the action that it was operating the mine under the leases mentioned in the complaint, and they knew, or could have known by proper inquiry, that royalties were being paid to Mrs. Smith and the Carr heirs under a lease of the mine. They knew that the leases to Pilling & Crane, of September 13, 1903, duly recorded, excepted " talc, talcous rock and soapstone, or other similar substances covered by outstanding leases now in effect." They also knew that the Pilling & Crane leases were executed under seal by John D. Smith, from whom Rosalie A. Smith derived her interest, and by Rosalie A. Smith herself, as well as by Edgar A. Carr, Etta P. Fisher, Ophelia M. Benjamin and Bower M. Carr. They also knew, or were chargeable with knowledge, of the facts relating to the alleged interest of Celia Woodcock. The Dominion Company cannot, therefore, stand in any better position than Rosalie A. Smith and the Carr heirs stood in at the time of the conveyance. It was not a purchase in good faith and without notice, but with notice.

We have spent too much time in showing that the Dominion Company and the Carr heirs, with their knowledge of the facts, are not in a position to claim that the lease of October fifteenth was not executed by or in behalf of Rosalie A. Smith and the Carr heirs. The original lease given by David H. Balmat to the American Pulp Company covered every interest in the mineral rights at the time of its execution, and the International Pulp Company has for many years past been taking and removing talc from the mines and has been paying

the parties having any interest in the mines their royalty therefor. If any party deriving any interest from any of the heirs did not sign the lease of 1910, such party had a right under the lease of 1892 to the royalties, and the International Pulp Company was liable to pay the same. An agreement between the Union Talc Company and certain of the parties interested that the prior lease is superseded and canceled means that it is superseded and canceled as to the parties making the new lease. None of them had the right to cancel it or supersede it so far as any one not a party to the new lease is concerned. The Union Talc Company transferred its interest in the agreement of 1910 to the International Pulp Company, during the pendency of the action, but by an instrument bearing a prior date. The International Pulp Company has operated the mine and paid the royalty at all times, and if it did not have the right to operate or the duty to pay the royalty under the lease of 1910, equity requires that it be considered that it had that right and owed that duty under the former lease. We prefer, however, to consider that the October fifteenth lease also binds them. The alleged interest of Celia Woodcock accrued more than twenty years before action brought, and under section 1596 of the Code of Civil Procedure and *Wetyen* v. *Fick* (178 N. Y. 223, 233) her claim is not a serious objection to the relief sought. A dower interest, until it is admeasured, is deemed a chose in action rather than an interest in the land itself (*Aikman* v. *Harsell*, 98 N. Y. 186) and can be cared for in the judgment of partition. (Code Civ. Proc. §§ 1566–1569.) The equities of the parties do not require that the appellant companies shall lose the expensive improvements which they have put upon the property and that the lessors and their assigns shall have them gratuitously. Evidently they have been paid a fair royalty for all talc taken. Under the circumstances of the case now appearing, equity requires that the sale be made subject to these leases.

September 13, 1903, the firm of Pilling & Crane entered into agreements under seal with the heirs of John D. Balmat and their successors in interest, who represented substantially twelve-thirteenths of the mineral rights, by which the said

heirs or successors granted to the said firm the right to take and remove from said mineral reservation " all ores, minerals and metals except talc, talcous rock and soapstone or other similar substances covered by outstanding leases now in effect," for a period of twenty-five years from that date, the firm to pay twenty-five cents per ton royalty, with a minimum royalty of $200 per year, with the right to said firm to terminate said leases upon three months' notice in writing. The said leases contained an option to buy the said mineral rights covered thereby for $10,000, the option to be accepted by the firm or its successors making a demand in writing and the payment of $500 earnest money on account of such purchase price, and upon such earnest money being paid the lessors were to prepare and, upon the payment of the balance of such purchase price of $10,000, to execute in proper form and deliver to the said lessees, or to such party as may be designated by them, ." a proper deed of conveyance for all such mines, veins and deposits of ore, minerals and metals of every kind and description which they now own or have the right to lease or grant, except talc, talcous rock and soapstone or similar substance covered by outstanding leases now in effect, contained in the above described premises." It was provided that the deposit of the notice in the post office, with postage prepaid, addressed to the last-known residence of the lessors, should be sufficient notice of the acceptance, " provided that the payment of the said $500 earnest money be at the same time made to the attorney in fact or agent of said lessors to whom the payment of royalties are at that time payable or customarily made." The terms and conditions of the lease were to be binding upon each person signing it to the extent of his interest, and no further, whether or not all the persons named signed. One-half of the remaining one-thirteenth is now owned by the Northern Ore Company, the other one-half thereof by the Sylvia Lake Company and the Green Hill Mining Company. The interest of Pilling & Crane was assigned to the appellant Northern Ore Company. The assignment contained a covenant that the assignee will not surrender the leases, or exercise the option of purchase, without the written consent of Pilling & Crane. The royalties have been satisfactorily paid, and after the commencement of this action the ore company served the notices contemplated

by the leases, exercising the option to purchase, and tendered the $500 to DeAlton Balmat, to whom the payment of royalties were at that time payable or customarily made. He refused to accept it and it was paid to the Northern Trust Company, at Watertown, subject to his order, and he was notified of that fact. It is urged that by the assignment the ore company is precluded from exercising the option, the written consent of Pilling & Crane not having been shown. Pilling & Crane are parties to the action; Crane is the president of the Northern Ore Company, was a witness upon the trial in its behalf and there offered to pay the balance of $9,500 purchase money. Apparently the firm was consenting to the exercise of the option, but that fact is not very material. That clause was not put in the assignment for the benefit of the heirs and as a limitation upon the power to accept the option, but was a covenant given to the Northern Ore Company by the firm for its benefit only, and if its conditions have been violated it was solely a matter between the firm and the company.

It is urged that the appellants cannot review the judgment here, as their answers were not served upon all the defendants pursuant to section 521 of the Code of Civil Procedure. But section 1543 makes it clear that an answer in partition need not be served upon another defendant unless it controverts the title or interest of that defendant " as stated in the complaint." Here the complaint sets up all the leases, referring to the record of those which are recorded, and after giving the relationship of the parties alleges that their rights respectively are subject to the leases. The appellants' answers, therefore, are not controverting the title of any defendant as stated in the complaint. It is also urged that the notice of appeal has not been served upon certain defendants who did not appear, but section 1300 of the Code of Civil Procedure, under the caption " appeal, how taken," requires the notice to be served upon the attorney for an adverse party. In *Barnes* v. *Stoughton* (6 Hun, 254), relied upon to sustain respondent's contention, the notice of appeal was under section 327 of the old Code of Procedure, which required it to be served upon the adverse party. Section 799 of the Code of Civil Procedure provides that if the defendant has not appeared, service of a notice or other paper in an ordinary proceeding

in the action need not be made upon him unless he is actually confined in jail for want of bail. Reading the two sections together it seems that a defendant, who is not interested enough in an action to appear, cannot object if a judgment in his favor is reviewed without notice to him.

It is also urged that a tenant in common cannot sell his interest in the common property to a stranger to the prejudice of his cotenant. It is unnecessary to cite authorities to the effect that one tenant in common can only convey just such rights as he has, and his grantee is confined to that right. It is also clear that a tenant in common cannot sell his interest in the entire property and avoid the conveyance; neither can his cotenant do so. It is not important to discuss the leases as leases. The ore company makes no claim against anybody who did not sign them; it only seeks to enforce the options given by them against the parties executing them. It is not sought to permit a grantee of a tenant in common to go on and deplete the property by taking ore from it. The ore company does not seek a delay or to prevent a sale of the property. The complaint, and the the answer in that respect, are harmonious; a sale is to be had. The only question the ore company raises is that having exercised the option to purchase, the moneys which otherwise would be distributed to the parties from whom it purchased, should be paid to it, less any balance of the unpaid purchase price. It makes no difference to any tenant in common what becomes of the money to be paid on a sale of the interest of another cotenant. That question is one purely between the ore company and the party contracting with it; the plaintiff and every other party entitled to share in the proceeds will get their full share unprejudiced by the fact that other tenants may have con-tracted away their share. It is unnecessary to figure out exactly just what fractional interest the ore company has in the property. It claims an interest of seven hundred and twenty seven-hundred-eightieths by virtue of its options and concededly it owns the fee to thirty seven-hundred-eightieths which is not bound by the lease or options, so that, in substance, about thirty seven-hundred-eightieths is seeking to deprive the ore company of all its substantial rights in the property. A confusion has arisen, I think, by

treating the defendant's answer as seeking a specific performance of the contract of sale. This is not the effect of its position. It wants no conveyance. When the officer of the court is distributing the proceeds of sale, it simply asks that the money be disposed of according to the equities and rights existing between it and the parties with whom it has the special contract. The ore company has brought no action in equity, but it is brought into court to state its rights and take what is legally and equitably coming to it, and in order that the court may know who is entitled to the funds, it may hear the evidence and determine its effect. A defendant, when brought into a court of equity, may be entitled to equitable relief although the facts would not enable him as a plaintiff to maintain an affirmative action. The ore company was defeated upon the ground that the tender of the $500 was not kept good by a payment into court and an answer to that effect. Other questions are suggested which can better be determined upon a new trial, as the evidence to be given with reference to them may affect their solution. We will, therefore, consider only the questions stated and the denial of the motion for leave to pay the money into court.

The ore company, in its answer, alleged all the facts; no party at the time raised any question as to the sufficiency of the tender; the facts constituting it and payment were proved upon the trial without objection; the record does not show that any question was raised by any party until the tentative opinion was handed down by the court throwing a doubt upon the validity of the tender for the reasons stated. The ore company immediately asked permission to pay the money into court, amend the answer in that respect and to open the case for that purpose, which motion was denied upon the ground that an option contract is not favored and the equities of the parties were about equal. It was not suggested that the ore company had acted in bad faith in putting the tender in the bank, or that it had not acted seasonably after the question was first raised. Its intent to fully exercise the option and to become the purchaser of the property and pay for it appears from the findings. The respondents studiously avoided making objection, evidently with the view of preventing an application for an amendment. We may at least

express a doubt whether the history of the case and the trial, after the answer, did not amount to a waiver of the payment of the money into court, if such payment was necessary. (*Platner* v. *Lehman*, 26 Hun, 374; *Cass* v. *Higenbotam*, 100 N. Y. 248; *Wilson* v. *Doran*, 110 id. 101; *Knight* v. *Beach*, 7 Abb. Pr. [N. S.] 241; *Halpin* v. *Phenix Ins. Co.*, 118 N. Y. 165, 178.)

Manifestly the provisions of the Code of Civil Procedure relating to tender have no application to this case. A payment into court is necessary if it is to extinguish a debt, stop interest, prevent the recovery of costs or in the cases provided by sections 731–734 of the Code of Civil Procedure. Here the tender was not for any such purpose; it was simply the act of a party indicating its acceptance of an option and an attempt by it to perform its conditions; hence no payment of the money into court was necessary. (*Rush* v. *Wagner*, 184 App. Div. 502; *Cresco Realty Co.* v. *Clark*, 128 id. 144; *Smith* v. *Slosson*, 89 Hun, 568, 573; *Bieber* v. *Goldberg*, 120 App. Div. 457, 458; *Exchange Fire Ins. Co.* v. *Norris*, 74 Hun, 527; *Freeson* v. *Bissell*, 63 N. Y. 168; *Selleck* v. *Tallman*, 87 id. 106; *Halpin* v. *Phenix · Ins. Co.*, 118 id. 165, 178.) The cases recognize that by the payment of the money into court the tenderee is bound to get it and the tender cannot be withdrawn. Here, evidently, the payment is irrevocable and the only relief the ore company asks or can have is that after the parties from whom it purchases have been fully paid by it, or by the proceeds of the sale of the property to be brought into court, it shall have the remainder of the proceeds if any. This is not an action at law based upon technical grounds, but relates to the marshaling of assets in a court of equity. As we have seen, the acceptance of the offer, and the tender, created a valid contract for the mines. Where premises under contract of sale are sold in partition, the vendor ànd vendee will receive the share of the proceeds to which they are respectively entitled. The question here is not one of tender, but of an offer to perform a contract and being prevented from performing, which is equivalent to performance unless it is sought to bar costs, to prevent a recovery of money loaned or stop interest. As the basis of creating a liability or accepting an offer, a payment into court is not necessary.

Here the requirement was to pay earnest money, and its offer and refusal were equivalent to payment.

When an option is accepted, the acceptance makes a mutual contract which may be specifially performed. (*Hamilton College* v. *Roberts*, 223 N. Y. 56, 63.) In specific performance, where a tender is refused, it is unnecessary to pay the money into court. (*Murray* v. *Harbor & Suburban B. & S. Assn.*, 91 App. Div. 397; affd., on opinion below, 184 N. Y. 596.) A court of equity is not bound by stringent rules so that it must deny equity and justice on technical grounds. Equity does not expect or require that vain and unnecessary things be done. The other parties interested in the option cannot suffer, as an officer of the court will have the moneys and will pay them; the only question is in what manner will he dispose of the balance of the moneys, and equity, justice and fair dealing can have but one answer to that question. It was error for the court below to determine that the option was not exercised because of the failure to pay the money into court.

The questions upon which the respondents have succeeded do not affect, in a substantial degree, the original parties who gave the leases and options, or their descendants, but principally affect men and mining companies who are dealing in this speculative and uncertain kind of property. The most of the conveyances from the tenants in common to the respondents contain this, or a similar provision: " This conveyance is made subject to two leases of the rights and interests hereby conveyed and an option to purchase the same contained therein. All obligations therein of parties of first part are assumed by the party of second part." The position of the respondents is technical and against the equities of the case. The fact that Pilling & Crane took leases and options of mineral rights does not indicate that there was anything of value covered by them. The nature of such property is well known. To have a substantial value there must be expensive drilling to show whether or not there is ore of commercial value. Quite probably the original lessors and their representatives would not have known that there was valuable ore in the reservation aside from the development made by the ore company. It has drilled five holes, one of which was

put down 700 feet. It has been demonstrated to its satisfaction or its hope that there is value there. Its rights are not to be balanced in equitable consideration by the claim of parties who have slipped in during the pendency of the action, or in contemplation of it, and with knowledge of all the facts acquired the rights of the original grantors in the hope that by some technicality they may get the benefit of the value discovered by the ore company. If respondents have spent large sums in buying doubtful and unfounded claims to deprive the ore company of the profits fairly coming to it, that does not appeal to a court of equity under the circumstances. The controversy is between the ore company, which in good faith has taken its lease and options and given the property a value, and companies which, knowing all the facts, have bought doubtful outstanding rights, relying upon technicalities which have no substantial basis in a court of equity. They do not misunderstand the facts; they are of record and are well known. The misunderstanding arises in assuming that a court of equity will rest its judgment on technicalities, overlooking the equities of the parties.

Considering the authorities cited in the opinion at Special Term, it may be considered that the question as to the payment of the money in court is not entirely free from doubt. If a mistake has been made, it was the innocent mistake of an attorney, an officer of the court, and the client who seasonably asks to be relieved from such a mistake before judgment should be favored. In the interest of safety the appellant asked for the amendment. We should not compel it to rest its case upon what may be the final decision of the court, upon a technical question of practice which it seeks to avoid. The court will render assistance to suitors in arriving at a determination of litigations upon the merits; defects or omissions will be corrected by proper amendments or disregarded as justice requires. (Code Civ. Proc. §§ 721–723.) The motion should have been granted upon payment of motion fees and a trial fee, and this question of practice removed from the case.

The order should be reversed and the motion granted, upon the payment by the ore company of ten dollars costs of motion and a trial fee. The judgment appealed from should be

reversed upon the law and the facts and a new trial granted. The reversal is without costs so far as the Northern Ore Company is concerned but with one bill of costs to the pulp and talc companies to be paid from the proceeds of sale.

All concur.

Order reversed and motion granted, upon payment by ore company of ten dollars costs of motion and a trial fee. Judgment appealed from reversed upon the law and the facts and a new trial granted. The reversal is without costs so far as the Northern Ore Company is concerned, but with one bill of costs to the pulp and talc companies to be paid from the proceeds of sale. The court disapproves of findings of fact 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 58, 61.