In the Matter of the Estate of PHILIP J. KEARNS, Deceased.

Surrogate's Court, Bronx County, April 9, 1931.

*Goldwater & Flynn* [*Monroe Goldwater* and *Sol Boneparth* of counsel], for the administrator c. t. a.

*Phillips, Mahoney, Leibell & Fielding,* for Federation Bank and Trust Company.

*Daniel J. Mooney,* for County Trust Company of New York.

*Laughlin, Gerard, Bowers & Halpin,* for Corn Exchange Bank Trust Company.

*Jonas & Neuberger,* for Manufacturers Trust Company.

*Kadel, Van Kirk, Trencher & Villamena,* for Bank of Manhattan Trust Company and Port Morris Bank.

*Albert C. Jordan,* for Yonkers National Bank and Trust Company.

*Moses & Singer,* for the Public National Bank and Trust Company of New York.

*Paul E. Mead,* for Irving Trust Company.

*Hyman Orlean,* for Joseph De Leon and others.

*Larkin, Rathbone & Perry,* for Central Hanover Trust Company.

*Curtin & Glynn,* for Bank of America National Association.

HENDERSON, S.   No objections have been filed in this proceeding for the judicial settlement of the account of proceedings of the administrator with the will annexed.   The claim of such representative, however, must be proved to  and allowed by the surrogate

before it can be paid. Although the value of the assets is very great, the estate is insolvent and several questions of law have been submitted as to distribution among the creditors and the assignee of the widow's dower.

As to creditors the questions arise by reason of the fact that some of the creditors are unsecured and have not received any payment from sources outside the estate; others have received partial payments from sources other than the estate; and two have received partial payments from other sources and have realized upon securities held by them as collateral.

The rule is well settled that a creditor may prove his entire debt against the general estate without regard to the security he may hold and without deducting any payment made to him from sources other than the debtor or the latter's estate. (*McGrath* v. *Carnegie Trust Company*, 221 N. Y. 92, 95; *People* v. *Remington*, 121 id. 328, 332; *People* v. *Granite State Provident Assn.*, 41 App. Div. 257, 265; affd., 161 N. Y. 492; *Matter of Simpson*, 36 App. Div. 562; affd., 158 N. Y. 720.)

As to insolvent estates of decedents this rule has not been limited by statute, and I hold that each secured creditor and each creditor who has received partial payments from sources other than decedent's assets, is entitled to a *pro rata* distribution based on the full amount of his claim as it existed on the date of decedent's death. The amount now to be paid to each creditor is the sum by which his distributive share exceeds the amount he has received from the estate on account of his claim.

Another controversy arises from the language used in the collateral loan agreements executed by the decedent and delivered to the Bronx County Trust Company and the National City Bank, the two creditors who have realized upon the sale of securities of the decedent, respectively held by them as collateral under said agreements. It becomes necessary to determine whether or not it was intended that these agreements and the collateral securities deposited thereunder should secure the entire indebtedness of the decedent to these creditors.

The decision in *Gillet* v. *Bank of America* (160 N. Y. 549) was based upon the language used in a collateral loan agreement concerning deposits of certain property " as collateral security for the payment of this or any other liability or liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing." It was there held that any doubt as to the meaning of the terms in the agreement must be liberally construed in favor of the obligor and against the obligee bank which had proposed the instrument and chosen its language. The

agreement was there construed to exclude claims against the obligor purchased by the obligee bank though such claims were liabilities of the obligor and owned by the obligee, and it was held that " such unusual and almost unlimited power over the property of another is not to be implied or inferred from doubtful or uncertain language."

In the present proceeding, however, the language employed in each of the two collateral loan agreements in question is neither doubtful nor uncertain, and as the decedent executed them, his estate and its representative are bound thereby.

The agreement with the Bronx County Trust Company is most comprehensive and specific. The collateral was deposited as security " for the payment of this note, or any note given in extension or renewal thereof, as well as for the payment of any other liability or liabilities, whether joint or several, direct or contingent, of the undersigned, or any or either of them, to the said Company, or claims of said Company against the undersigned, or any or either of them, due or to become due, whether now existing or hereafter arising and whether created directly or acquired by assignment or otherwise."

The agreement with the National City Bank provides that the collateral was pledged for the payment of the note then made, " or any note given in extension or renewal thereof, as well as for payment of any other obligation or liability, direct or contingent, of the undersigned, to the Bank, due or to become due, whether now existing or hereafter arising." Two weeks prior to such loan this bank had discounted for the decedent a note for $100,000. Similar language has been construed to include past as well as future liabilities of the obligor to the obligee.

" It is quite obvious that the words ' may hereafter be contracted or existing ' were intended to include liabilities which had matured, those which had not matured, those which might thereafter be contracted or thereafter exist, although previously contracted, or those founded upon implied liabilities arising out of transactions between them, as in the case of a dishonored check or note deposited, or an overdraft from which a liability to make the account good was to be implied. All these would be liabilities to the bank." (*Gillet* v. *Bank of America*, 160 N. Y. 549, 559.)

The entire claim of the Bronx County Trust Company is based on the promissory note of the decedent payable to the order of the claimant at its office containing the said agreement (concerning which there is no dispute), and seven promissory notes of corporations, each payable to the claimant at its office, signed by the decedent as an officer of the corporation maker, indorsed by the

decedent and his wife, and discounted by the claimant subsequent to the date of the agreement.

The entire claim of the National City Bank is based upon two promissory notes of the decedent each payable to the order of the claimant, at its office, one made at the time of the agreement, and the other discounted two weeks prior thereto.

I find that each of the promissory notes held by these creditors was duly presented for payment and dishonored by non-payment; that notice of the dishonor of each note indorsed by the decedent was duly given to the personal representative of the decedent, and that his estate is liable thereon. (Neg. Inst. Law, §§ 143, 144, 160, 167, 169.)

I, therefore, hold that the collateral deposited under each of these two agreements of the decedent is properly held as security for the entire indebtedness of the decedent to the obligee named therein.

The claim of the administrator with the will annexed is allowed in full to be paid in the same proportion as the claims of the other creditors in the fourth class specified in section 212 of the Surrogate's Court Act.

The questions of law submitted with reference to the rights of creditors are answered accordingly as follows: " Q. In determining the basis upon which a creditor is entitled to a *pro rata* distribution must the administrator adopt as such basis (A) The full amount of the creditor's claim as allowed as of the date of decedent's death." A. Yes, " or (B) The amount of the creditor's claim allowed as of the date of decedent's death, (a) Reduced by the amount realized by said creditor upon the sale of collateral security of the decedent held by the creditor? " A. No, " and/or (b) Reduced by the amount received by the creditor by way of dividends or distributions from sources exclusive of the estate? " A. No. " Q. Shall the Administrator pay to these two claimants (who have received partial payments from other sources and have realized upon securities held by them as collateral) such sums on the present distribution as will permit the said creditors at this time to receive more than 100% of the claim presented by each? " A. Yes, except as modified in the answer to the next question.

" Q. And if so, what are the rights, if any, with respect to the moneys heretofore paid to the respective claimants by Honora V. Kearns [widow of decedent and indorser for accommodation on some of the notes included in their claims], or out of her dower? " A. Each creditor who thus receives more than 100 per cent of his claim holds such excess in trust for the following parties, with

priority and preference in the beneficial interest thereof in the order named: Honora V. Kearns, the indorser, to the extent of her personal contribution; the assignee of the dowress up to the amount paid out of dower; the representative of the estate for distribution among the other creditors whose claims have not been paid in full. (*Hanlon* v. *Union Bank of Medina*, 247 N. Y. 389, 391; *McGrath* v. *Carnegie Trust Co.*, 221 id. 92, 94; *M. S. Bank* v. *Pierce*, 137 id. 444, 447; *People* v. *Remington*, 121 id. 328, 336.) As all those interested in any overpayment are parties to this proceeding, the decree will direct payment of such excess, if any, to the party or parties equitably entitled thereto. (Surr. Ct. Act, § 40.)

The remaining questions of law concern the basis upon which and the method by which the amount of compensation for dower shall be calculated.

The decedent died testate on December 25, 1927, and his will was admitted to probate on January 5, 1928. He gave all his estate to his widow and designated her as the sole executrix. She renounced such appointment, and letters of administration with the will annexed were issued to the petitioner on January 5, 1928. The will contained no power of sale and the real estate, together with the widow's right of dower, was sold for the payment of the decedent's debts, pursuant to article 13 of the Surrogate's Court Act, and under an order of this court, dated March 30, 1928. Prior to the sale, rents were collected and the usual real estate disbursements were made. The net rents and the proceeds of the sale are now in the hands of the administrator c. t. a. for distribution in this proceeding.

No admeasurement or assignment of dower in the decedent's real property has been made and it is, therefore, a mere right of action (*Lawrence* v. *Miller*, 2 N. Y. 245; *Lawrence* v. *Brown*, 5 id. 394, 399; *McLear* v. *Balmat*, 194 App. Div. 827, 833; affd., 231 N. Y. 548) and assignable (*Payne* v. *Becker*, 87 N. Y. 153, 158; *Bostwick* v. *Beach*, 103 id. 414, 423; *Conlon* v. *Marsh*, 190 App. Div. 396; affd., 232 N. Y. 594). The widow has assigned her right of dower to a trustee for the benefit of her creditors.

Section 248 of the Surrogate's Court Act provides that in such a sale " The regulations and provisions of law in relation to the right of dower  *  *  *  in actions for the partition of real estate, so far as the same may be applicable, shall govern and control the disposition of moneys realized on such sale which shall belong to the owner of said right of dower."

The pertinent statutory regulations as to such moneys in partition actions are contained in sections 1050 and 1051 of the Civil Practice Act, which provide that where the right of dower is included

in the sale, " the dowress is entitled to receive from the proceeds of the sale of the whole property a gross sum in satisfaction of her right of dower, or to have one-third of those proceeds paid into court for the purpose of being invested for her benefit," and that such gross sum shall " be fixed according to the principles of law applicable to annuities, in satisfaction of * * * her * * * interest."

There is now no statutory enactment of such principles expressly relating to dower in partition actions. Rule LXX of the former General Rules of Practice read as follows: " Whenever a party, as a tenant for life, or by the curtesy, or in dower, is entitled to the annual interest or income of any sum paid into court and invested in permanent securities, such party shall be charged with the expense of investing such sum, and of receiving and paying over the interest or income thereof; but if such party is willing, and consents to accept a gross sum in lieu of such annual interest or income for life, the same shall be estimated according to the then value of an annuity of five per cent. on the principal sum, during the probable life of such person, according to the Carlisle Table of Mortality."

In 1921 the Rules of Civil Practice superseded the General Rules of Practice; rules 30 and 243 replaced rule LXX, and the American Experience Table of Mortality was substituted for the Carlisle Table of Mortality.

Rule 30 reads: " When a party is entitled to the yearly interest or income of any sum paid into court and invested in permanent securities, he shall be charged with the expense of investing such sum and of receiving and paying over the interest or income thereof.

" If such party consent to accept a gross sum in lieu of yearly interest or income for life of a sum of money paid into court for his benefit, (except in case of dower which is provided for by rule two hundred and forty-three) the same shall be estimated according to the then value of an annuity at the rate of five per centum on the principal sum, during the probable life of such person, according to the American Experience Table of Mortality."

Rule 243, however, does not provide for all cases of dower. Its application is limited by its very language, as follows: " If the plaintiff in an action for dower consent to accept a gross sum in full satisfaction and discharge of her right of dower, the same shall be estimated according to the value of an annuity of five per centum upon one-third of the value of the property at the time of the husband's death during the probable life of the plaintiff according to the American Experience Table of Mortality."

A reason for such limitation and for such variance from the

familiar principles applicable to annuities may be found in the statutory provisions relating to an action for dower, which are now consolidated under article 14 of the Real Property Law. In such an action a consent to receive a gross sum in satisfaction of dower may be given and accepted, the value of the dower ascertained and the payment thereof directed, without any sale. (Real Prop. Law, §§ 480, 481, as added by Laws of 1920, chap. 930.) There is no reference in that article to any principle by which this gross sum shall be calculated where there is no sale. There is a provision that in such event " the court may, in its discretion, and upon such terms as justice requires, ascertain the value of the plaintiff's right of *dower in the property*, * * * and make an order, directing payment, by the applicant, of the sum so ascertained." (Italics are writer's.) (Real Prop. Law, § 481.) Upon a sale, however, " the court must ascertain, * * * what gross sum of money is equal to the value of the plaintiff's *dower in the net proceeds of the sale*, calculated upon the principles applicable to life annuities." (Italics are writer's.) (Real Prop. Law, § 488, as added by Laws of 1920, chap. 930.) The language, italicized by me, in the above-quoted portions of article 14 itself denotes a legislative intent to distinguish between these two methods of satisfying dower by the payment of a gross sum. Where there are no proceeds of sale nor any other fund for investment, former rule LXX and rule 30 would not be applicable. By the adoption of rule 243, a necessary regulation was provided for ascertaining the amount to be paid the dowress in such an event. I am further convinced that rule 30 is properly applicable to circumstances within section 248 of the Surrogate's Court Act for the reason that if such consent were not filed, the assignee of the right of dower would be entitled to have " one-third of those proceeds " paid into court for the purpose of having the same invested for its benefit. (Civ. Prac. Act, § 1050.) The provision for permitting the acceptance of a gross sum in lieu of the income from such investment is just and fair only when such gross sum is equal to the present value of the enjoyment of such income ascertained by equitable principles. The actual amount to be so invested is the only proper and fair basis for computing such present value. To base such computation upon one-third of the value of the property at the time of the husband's death might result in leaving for the heirs a small fraction of the proceeds of sale in the event of a depressed market. There are other circumstances under which similar injustice would result to either the dowress or the heirs or to those who have succeeded to their respective rights, when such gross sum is to be paid " from the proceeds of the sale " as prescribed in section 1051 of the Civil

Practice Act, and at the same time calculated upon a prior value. There have been no improvements upon the property since the decedent's death, and any discussion thereof is irrelevant here.

It seems very evident that the calculation of this gross sum, where the property has not been alienated in the husband's lifetime, should be based upon the actual proceeds of sale, together with the incumbrances, if any, created by the acts of the husband without the acquiescence of the wife (*Lawrence* v. *Miller*, 1 Sandf. 516, 543 [3 N. Y. Super. Ct.]; revd., on other grounds, 2 N. Y. 245; Real Prop. Law, §§ 192, 193, 194 and 203), and that the then value of an annuity upon one-third of that amount should be ascertained according to rule 30 of the Rules of Civil Practice.

Authority for such method of calculation may also be found in *Hale* v. *James* (6 Johns. Ch. 258, 260, 263) and in *Bostwick* v. *Beach* (103 N. Y. 414, 424). In the former case it was held that if the husband died seized of the real property, the endowment is to be according to the value at the time the assignment is made by the heir. In the latter case it was held that the value of the dower right should be ascertained as of the date when the husband's executors (one of whom was the widow) had contracted to execute a deed of the property. The court said that " She would have been entitled to that if she had performed the contract." The owner of the dower right is also entitled to interest on such gross sum from the date of sale to the time of distribution. (*Higbie* v. *Westlake*, 14 N. Y. 281, 285.)

I, therefore, hold that the owner of the dower right is entitled to receive from the net proceeds of the sale of all the real property a gross sum equal to the value at the time of sale of an annuity upon one-third of such proceeds at the rate of five per centum during the probable life of the widow after that time, according to the American Experience Table of Mortality, with interest on said gross sum from the time of sale to the date of payment.

As to the rents accruing after the husband's death and up to the time of sale, the court may adjust the rights of the parties in actions for partition. (Civ. Prac. Act, § 1075.) They have been so adjusted between cotenants in such actions (*Scott* v. *Guernsey*, 48 N. Y. 106, 124; *Adams* v. *Bristol*, 126 App. Div. 660, 664; affd., 196 N. Y. 510), and in one the widow was awarded one-third of the net rents accruing after the husband's death in addition to the gross sum payable out of the proceeds of the sale. (*Ryder* v. *Kennedy*, 224 N. Y. 407, 412.)

I hold that the owner of the dower right is also entitled to receive one-third of the net rents in the hands of the administrator c. t. a., which accrued after the death of the decedent. As the dower

attached to all the real property, the usual expenses and charges of carrying the unimproved as well as the improved land should be deducted from the gross rents in ascertaining the net rents for the purpose of satisfying the dower up to the time of sale.

The questions as to dower set forth in the petition are accordingly answered as follows:

I. Q. " Is the widow's dower to be calculated on the value of the real property at its actual sale price, or upon value at the time of death? " A. On one-third of the net proceeds of sale.

II. Q. " Is the widow's dower to be calculated on the basis of her age at the time of decedent's death, or upon the basis of her age at the time of the actual sale of the property? " A. At the time of the actual sale.

III. Q. " Is the widow entitled to a share of the rents of income-producing property for the period between the date of decedent's death and the date of the actual sale? " A. Yes.

IV. Q. " Are the conservation charges (taxes, assessments, etc.) on unproductive property to be offset against net rent income so far as possible, or are such charges to be made against either the sale prices or against the valuations of the unproductive properties at the date of decedent's death? " A. Taxes and other usual carrying charges and expenses accruing since decedent's death, exclusive of assessments, should be paid out of the gross rents as far as possible. Any deficiency therein together with assessments paid by the estate, should be charged against the proceeds of sale.

Settle decision and decree accordingly.