John M. McGrath, Appellant, v. Carnegie Trust Company et al., Respondents.

Subrogation — right thereto does not accrue until whole debt has been discharged by person seeking to be subrogated.

1. The equity of subrogation does not arise until the whole debt has been discharged. Hence a creditor may not be required to surrender any part of his collateral till payment has been made in full.

2. The trust company, defendant, agreed to use certain funds received by it from plaintiff's assignor for the purchase of stocks which it was to hold in trust as collateral to a loan made by such assignor to the makers of the notes. The trust company did not buy the stocks and is now insolvent. The makers of the notes have paid plaintiff part of the amount due thereon. This action has been brought to determine the indebtedness on which the plaintiff's dividend must be computed in the distribution of the defendant's assets. *Held*, that the defendant has no concern with the payments made by the makers of the notes, and hence the plaintiff is entitled to have the dividends computed on the whole amount of the trust deposit held by defendant.

*McGrath* v. *Carnegie Trust Co.*, 171 App. Div. 143, reversed.

(Argued May 7, 1917; decided June 5, 1917.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 25, 1916, affirming a judgment in favor of plaintiff for part only of the relief demanded entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry B. Closson* for appellant. Plaintiff was entitled to judgment against Carnegie Trust Company for the full amount of the trust fund, to wit, $140,000. (*Madison Square Bank* v. *Pierce*, 137 N. Y. 444; *Culliford* v. *Walzer*, 13 Misc. Rep. 493; *Matter of Heyman*, 95 Fed. Rep. 800; *Hanover National Bank* v. *American Dock, etc., Co.*, 14 App. Div. 255; 43 N. Y. Supp. 544; 8 Corpus Juris. 822, 823; 1 Abbott's Cyclo. Digest, 875,

876; *Hills* v. *Flynn*, 161 App. Div. 127; *Carr* v. *Carr*, 52 N. Y. 251; *G. Nat. Bank* v. *Queen*, 159 App. Div. 236; *Fairbanks* v. *Sargent*, 117 N. Y. 320; *Wheeler* v. *Newbould*, 16 N. Y. 392; Jones on Collateral Securities [3d ed.], §§ 664, 680; *Field* v. *Sibley*, 74 App. Div. 81; 174 N. Y. 514; *Bank of Staten Island* v. *Silvie*, 89 App. Div. 465.)

*Samuel S. Koenig* and *Milton M. Sittenfield* for respondents.

CARDOZO, J. In April, 1910, the Ninteenth Ward Bank, the plaintiff's assignor, paid to the defendant, the Carnegie Trust Company, $140,000. The payment was made by checks drawn by the bank to the defendant's order. In return the bank received a written agreement which, after the correction of some admitted errors, reads as follows:

"NEW YORK, *April 23rd,* 1910.

"Mr. BRADLEY MARTIN, JR., President,

   "Nineteenth Ward Bank,

      "3d Ave. & 57th St.,

         "New York, N. Y.:

"DEAR SIR.— We acknowledge receipt hereof from the Ninteenth Ward Bank of $140,000, the proceeds of the following notes:

Demand note of Charles A. Moore, Jr........ $70,000  00
    "      "    " Merchants & Manufacturers'
                      Securities Company......   70,000  00

"The above amount to be used by us toward the payment of the Carnegie Trust Company stock at $1.75; Twelfth Ward Bank stock at $1.00.

"We agree to hold in trust for you, or any trustees named by you, the above collaterals as paid for by us at prices mentioned above. Whatever part of the above amount is not employed in the purchase of the above stocks, shall be subject to your order at any time.

      "Yours very truly,    R. L. SMITH,

                  "*Vice-President.*"

Before the delivery of this agreement the bank had undertaken to loan $70,000 to Charles A. Moore, Jr., and a like sum to the Merchants and Manufacturers' Securities Company, upon their promissory notes.   The loan was made on the condition that the proceeds be paid to a trustee and invested in stock, which was to be held as collateral security.   In fulfillment of that condition the payment to the trust company was made.   The trust company never bought the shares mentioned in its agreement.   It closed its doors on January 7, 1911, and is now insolvent and in liquidation.   The sum of $16,000 has been paid to the bank by the makers of the notes.   Not a dollar has been paid by the trust company.   This action has been brought to determine the indebtedness on which the plaintiff's dividend must be computed in the distribution of the defendant's assets.   The courts below have held that the trust company must be credited with $16,000 paid by the makers of the notes, and that the dividend is, therefore, to be computed on $124,000, and no more.   The plaintiff says that this restriction is erroneous, and that the dividend is to be computed on $140,000, the amount of the trust deposit. We are to choose between these conflicting claims.

Our judgment is that the plaintiff's claim must be upheld.   The defendant made a contract which cannot be misread.   The contract was that the money paid to it by the bank should be subject to the bank's order.   That contract it has not kept.   It has no concern with payments made by strangers.   They were not made in its behalf (*Atlantic Dock Co.* v. *Mayor, etc. of N. Y.*, 53 N. Y. 64, 67; *Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528, 540).   Its duty is to keep its contract.   The dividend computed on $140,000 may not amount to $124,000.   If it amounts to more, the bank will hold the excess in trust for the makers of the notes (*Madison Square Bank* v. *Pierce*, 137 N. Y. 444; *Hanover Nat. Bank* v. *Am. Dock & Trust Co.*, 14 App. Div. 255, 259).   But those are matters in which the defendant has no interest.   A right

of action became vested in the bank at the moment of the trust deposit. The ownership of that right of action has never changed except as it has passed to the plaintiff by force of the bank's assignment. It is not partly in the plaintiff and partly in the makers of the notes. Their payments on account of the notes did not transform them into equitable assignees of the right of action against the trust company. The defendant's liability is single and entire.

Any other conclusion would be fruitful of unjust results. To split the right of action between the bank and the bank's customers would be to destroy a part of the security. A debt fixed at $124,000 must yield a dividend of something less, for the debtor, the trust company, is insolvent. The judgment under review leaves the deficiency unsecured. By applying the $16,000 in reduction of the defendant's debt, the creditor has been made to lose a part of his collateral. The outcome demonstrates the error. A creditor may not be required to surrender any part of his collateral till payment has been made in full (*People* v. *Remington & Sons*, 121 N. Y. 328, 333; *Evertson* v. *Booth*, 19 Johns. 486). If the makers had paid in full, a different question would be here. The right of action against the trust company might then pass to them by subrogation as equitable assignees (*Dunlop* v. *James*, 174 N. Y. 411; *Twombly* v. *Cassidy*, 82 N. Y. 155). But the equity of subrogation does not arise until the whole debt has been discharged (*Columbia F. & T. Co.* v. *Kentucky Union Ry. Co.*, 60 Fed. Rep. 794, 796; Sheldon on Subrogation, § 127).

The judgment of the Appellate Division, so far as appealed from, should be reversed, with costs in the Appellate Division and in this court, and the judgment of the Special Term should be modified by adding to the plaintiff's claim the sum of $16,000, with interest from April 23, 1910, to January 7, 1911.

Chase, Collin, Hogan and Pound, JJ., concur; Cuddeback, J., dissents; Hiscock, Ch. J., not voting.

Judgment accordingly.