William Fox, Plaintiff, *v.* Lawrence Mulligan and Patrick
H. Sullivan, as Executors, etc., of Timothy D. Sullivan,
Deceased, Defendants.

Hannah Sullivan, as Receiver of the Estate of Timothy D. Sul-
livan, Deceased, Appellant; Metropolitan Bank, Respondent.

First Department, April 7, 1922.

Guaranty — general guaranty of payment at maturity of all notes that
might be discounted by bank for third person — claim against guaran-
tor's estate based on three notes — claim cannot be made on one note
that was paid by indorser — indorser subrogated to rights of bank.

Where the payment at maturity of all bills, notes, checks or evidences of debt
that might be discounted by a bank for a third person was guaranteed, the
bank has no claim against the estate of the guarantor on one of three notes
discounted by the bank and not paid at maturity, but which after a judgment
had been recovered, was paid by an indorser thereon, and the judgment assigned
to him.

*It seems,* that the indorser was subrogated to the claim of the bank against the
estate of the guarantor under the guaranty in so far as the claim was based upon
the particular note.

Appeal by Hannah Sullivan, as receiver of the estate of Timothy
D. Sullivan, deceased, from an order of the Supreme Court, made
at the New York Special Term and entered in the office of the clerk
of the county of New York on the 14th day of October, 1921,
directing said receiver to pay dividends to the Metropolitan Bank,
based upon the whole amount of its three separate claims.

The nature of the receivership is not disclosed by the record;
but the motion was made and heard on the assumption that the
appellant was by an order duly made in this action appointed a
substituted receiver of the property of Timothy D. Sullivan,
deceased, and that two orders for the payment of dividends to
duly proved creditors of the estate have been duly made herein,
the first for ten per cent and the second for fifteen per cent upon
the principal of the claims as proved. The decedent was the
principal stockholder and a large creditor, for moneys loaned, of the
C. J. Sullivan Advertising Company, which for brevity will be
referred to as the Advertising Company. The Advertising Company
was desirous of transacting business with the Metropolitan Bank
and to have the bank discount negotiable paper for it and as
security therefor the decedent, on the 1st of March, 1909, executed
to the bank a formal guaranty by which he guaranteed, among
other things, the payment at maturity of all bills, notes, checks or
evidences of debt that might be discounted by the bank for the
Advertising Company to the extent of not more than $100,000 at

any one time, the guaranty to remain in force until the termination of business relations between the company and the bank and the payment of all indebtedness and obligations thereunder unless sooner terminated by mutual consent.   On the 28th of July, 1913, the Advertising Company duly made its promissory note for $5,500 payable to its own order four months after date at the Metropolitan Bank and duly indorsed the note, which was also indorsed by three others, and was discounted by the bank.   The note was not paid at maturity and the estate of Sullivan as further security therefor and for Sullivan's liability on the guaranty, executed its note for like amount to the bank but it failed to pay the same at maturity.   The bank likewise discounted two other notes made by the Advertising Company to its own order, one for $1,000 on the 23d of August, 1913, and the other for $2,000 on the twenty-sixth of the same month.   No part of either note was paid.   On the 24th of May, 1918, the bank pursuant to the decedent's guaranty duly filed with the receiver a verified claim for the face amounts of these notes.   The notes for $1,000 and for $2,000 were not indorsed or secured otherwise than by said guaranty; but the note for $5,500 was indorsed by one Farrell and two other individuals and in or about the year 1920, after so proving its claim, the bank recovered a judgment against the indorsers for the full amount of the note with interest and costs and Farrell paid the amount thereof to the bank and took an assignment of the judgment.   It does not appear when the orders for the payment of dividends were made; but the receiver in the month of April, 1921, notified the bank that she would pay a first dividend of ten per cent and a second dividend of fifteen per cent to the creditors and that the amount of the bank's claim as filed with the receiver would be reduced to $3,000 for the reason that Farrell had satisfied its claim on the note for $5,500 and had become subrogated to its rights thereunder.   The bank demanded payment of dividends on the aggregate amount of the three notes, and on the refusal of the receiver to comply  therewith made the motion which resulted in the order from which this appeal was taken.

*Rogers & Rogers* [*Gustavus A. Rogers* of counsel; *Tudor Jenks* and *Harry F. Byrne* with him on the brief], for the appellant.

*Butcher, Tanner & Foster* [*Frederick C. Tanner* of counsel], for the respondent.

Laughlin, J.:

The liability of the receiver to the bank was predicated on the guaranty, but proof of the guaranty alone would establish no liability for it did not relate to an existing indebtedness and had

reference only to the future. The decedent thereby guaranteed the payment when due of such notes as the bank, relying on the guaranty, might thereafter discount. In order, therefore, to determine the liability, recourse must be had to the notes which were discounted by the bank after the decedent executed the guaranty and which were not paid at maturity. The claim of the bank was predicated on three notes; and, therefore, it had three separate and distinct claims. It parted with its claim under the note for $5,500 when it received payment in full from Farrell and assigned to him the judgment recovered thereon, and, although the point is not presented for decision, I think that he thereupon became subrogated to its claim against the estate of the decedent under the guaranty in so far as the claim was based upon that note. (*Bolen* v. *Crosby*, 49 N. Y. 183; *Townsend* v. *Whitney*, 75 id. 425; *Reed* v. *Lozier*, 48 Hun, 50; *McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92.) The learned counsel for the respondent relies principally upon *McGrath* v. *Carnegie Trust Co.* (*supra*), which holds generally that there is no equitable subrogation until the whole debt has been discharged and that, therefore, a creditor may not be required to surrender any part of his collateral until payment has been made in full. But if the assignee of the judgment became subrogated to the claim of the bank with respect to the debt evidenced by that particular note, the bank would not be required to surrender any part of its collateral in contravention of the rule stated, for it no longer holds or owns that note and is not entitled to dividends on the indebtedness evidenced thereby. Having parted with all claims arising on that particular note, its right to call upon the receiver by virtue of the guaranty to pay that note necessarily terminated and that is the only point we are called upon to decide; but it seems proper to observe, by way of argument, in showing how the bank parted with its right, that the right to any dividend on account of that note probably passed to the assignee. In *McGrath* v. *Carnegie Trust Co.* (*supra*) the Nineteenth Ward Bank, which assigned its rights to the plaintiff, paid to the defendant $140,000, being the proceeds of the discount of two specified notes for $70,000 each, and the defendant agreed to use the money in payment for its own stock and stock of the Twelfth Ward Bank at specified prices and to hold the stock so purchased in trust for the Nineteenth Ward Bank or any trustee named by it and to pay to the order of the Nineteenth Ward Bank any surplus of the $140,000 not used in the purchase of the stock. The transaction was in consummation of an agreement theretofore made between the Nineteenth Ward Bank and the makers of the two notes by which it agreed to loan to them the amounts of the

notes respectively by paying the same to a trustee to purchase the stock and hold it as collateral security for the notes. Defendant, after receiving the money and before buying any of the stock, became insolvent and did not repay any of the amount to the Nineteenth Ward Bank. The makers of the notes paid to the Nineteenth Ward Bank to apply on the notes the sum of $16,000. The action was brought to determine whether the plaintiff, in the right of the Nineteenth Ward Bank, was entitled to recover of the defendant dividends computed on the whole amount of $140,000 or only on that amount less $16,000. The court held that the defendant was not concerned with the payments made to the Nineteenth Ward Bank by the makers of the notes and was liable for the entire amount on its undertaking to pay to the order of the Nineteenth Ward Bank the moneys not used for the purchases of stock; that the dividends might not amount to the balance owing on the notes and that if they amounted to more the bank would hold the excess in trust for the makers of the notes but that this was of no concern to the defendant; that the right of action became vested in the Nineteenth Ward Bank the moment it deposited the money with the defendant and passed to the plaintiff by the assignment and was not partly in him and partly in the makers of the notes for the reason that the liability of the defendant was single and entire and that to split the right of action between the bank and its customers would destroy part of its security; that by the application of the $16,000 in reduction of the defendant's debt, as held proper by the Appellate Division, the creditor would lose part of his collateral which would be in conflict with the well-settled rule that a creditor may not be required to surrender any of his collateral until payment has been made in full, but that if the makers of the notes had paid in full, the right of action against the trust company might have passed to them as equitable assignees by subrogation. The distinction between that case and this lies in the fact that there was there a single, indivisible claim against the defendant whereas here there were three separate, independent claims covered by the guaranty, and the makers of the notes who were primarily liable thereon to the Nineteenth Ward Bank, to whose rights the plaintiff by the assignment succeeded, manifestly could not by part payment of their indebtedness become entitled to share in the amount realized on the collateral and were only entitled to any surplus realized from the collateral after payment of the note in full. I am of opinion, therefore, that the bank is not entitled to have its right to dividends determined on the basis of the three claims, one of which it has ceased to own.

It follows that the order should be modified by reducing the

**668** SANFORD NARROW FABRIC CO. *v.* AMERICAN W. M. E. CORP.

First Department, April, 1922. [Vol. 200]

principal upon which the bank is entitled to dividends from $8,500 to $3,000, and as so modified affirmed, with ten dollars costs and disbursements to appellant.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Order modified as directed in opinion and as so modified affirmed, with ten dollars costs and disbursements to appellant. Settle order on notice.