*686 OPINION OF THE COURT
Edward M. Horey, J.
The plaintiff Margaret T. Ingalls as executrix brought an action for the wrongful death of her husband, Dean B. Ingalls. In that action she named three parties defendant. The first-party defendant was Michael A. Ohl who was the operator of a van which struck the automobile in which the deceased was a passenger. The second named defendant was Ohl & Tarrant, Inc., the corporation which owned the van operated by its employee, Michael A. Ohl. The third defendant was James Webb, who was the operator of the automobile in which the deceased was a passenger and owner.
In a cross action the operator of the automobile, James Webb, brought an action against the operator and owner of the van, viz., respectively, Michael A. Ohl and Ohl & Tarrant, Inc.
Following a six-day trial before a jury the plaintiff was successful and was awarded a verdict of $330,000 for the wrongful death of her husband. The plaintiff’s verdict was against the defendants Michael A. Ohl and Ohl & Tarrant, Inc., only. The jury found no liability on the part of the defendant James Webb.
The defendant James Webb was also successful in his cross action against the defendants Michael A. Ohl and Ohl & Tarrant, Inc. His verdict rendered by the jury was for $10,000.
A judgment in the amount of $330,000 together with interest in the amount of $56,801.84 and disbursements of $771.11 totaling $387,572.95 was duly filed, entered and served. Similarly a judgment in favor of James Webb on his $10,000 award was made, entered and served.
It appears without dispute that the total amount of moneys available for payment of both judgments was $90,784.48. That was the sum remaining under a $100,000 liability policy issued by the Hartford Insurance Company on behalf of the defendants Michael A. Ohl and Ohl & Tarrant, Inc.
Applying a pro rata reduction to the verdict in favor of the plaintiff on the action for wrongful death and the verdict in favor of the defendant James Webb for personal injuries, it appears without dispute that Hartford Insurance Company has paid defendant James Webb $2,269.61 representing his full proportionate share of the moneys available. It is also undisputed that $85,586.57 has been paid by Hartford Insur *687 anee Company to the plaintiff together with an additional $771.11 representing attorney’s disbursements.
What remains unpaid by the Hartford Insurance Company is the even sum of $3,000. That sum is being retained by the Hartford Insurance Company "in escrow” as a consequence of a claim of $3,000 asserted by the Lumbermens Mutual Casualty Company.
The facts which give rise to the claim of Lumbermens are these: that company insured the vehicle operated by the defendant James Webb. Under a special endorsement to the liability policy a "$3,000 additional death benefit” was provided. It is agreed that an additional premium was charged and paid for this additional death benefit.
At a time after the death of Dean Ingalls and before trial of the action for his wrongful death, the Lumbermens Mutual Casualty Company paid the additional $3,000 death benefit to the plaintiff.
Lumbermens Mutual Casualty Company now asserts that it is entitled to be reimbursed for the noted $3,000 additional death benefit. In support of its claim it asserts a subrogation agreement dated March 10, 1986 entered into by "Margaret T. Ingalls, Surviving Spouse” and the Lumbermens Mutual Casualty Company.
The relevant terms of the subrogation agreement are three in number. They are set forth in full as each provision is the subject of argument of the parties.
"1. In accordance with the provision of the policy, the company is subrogated to the extent of any payment for additional first-party benefits to the rights of the applicant against any person who may be liable to the injured person because of bodily injury with respect to which additional personal injury protection benefits are afforded under this policy.
"2. The undersigned shall cooperate with the company and upon the company’s request, assist in the conduct of suits and in enforcing any company right of subrogation for additional personal injury protection benefits paid against any person who may be liable to the injured person because of bodily injury with respect to which additional personal injury protection benefits are afforded under this policy.
"3. The undersigned to or for whom payments are made or the undersigned’s legal representative will notify the company in writing prior to institution of any legal proceedings against any person legally responsible for the above described bodily *688 injury and will do whatever is necessary to secure and to do nothing to prejudice the company’s subrogation rights.” (Italics added.)
The court reviews the contentions of the parties.
The plaintiff contends that the provisions of the subrogation agreement are inapplicable. In support of that contention, the plaintiff argues that the subrogation agreement applies only to funds actually recovered by the plaintiff for "additional first-party benefits.” Under the terms of paragraph 1 of the agreement, plaintiff contends that she never recovered any additional first-party benefits. The contention of the plaintiff as stated in the memorandum of her counsel is as follows: "The purpose of that paragraph [i.e., para 1] is to prevent the plaintiff from recovery twice for the same claim, and to prevent the insurance carrier from being required to pay twice. Therefore, the subrogation agreement is effective only if the jury awarded plaintiff a sum to compensate her for funeral expenses for which she had already received compensation from Lumbermens.”
The plaintiff then argues that the verdict of the jury did not award her anything to compensate for funeral expenses. This fact the court finds to be true. The court also finds the following to be true. No proof regarding funeral expenses was offered at trial. No argument was made to the jury concerning funeral expenses and there is nothing in the verdict rendered by the jury that funeral expenses were included.
A second argument of the plaintiff proceeds from the provision of paragraph 2 of the subrogation agreement. Here, the plaintiff argues that under the provision of paragraph 2 it was only "upon the company’s request” that the plaintiff was contractually obligated to "assist in the conduct of suits and in enforcing any company right of subrogation” (italics added). It is undisputed that Lumbermens Mutual Casualty Company never made a request of the plaintiff to either assist in the conduct of any suit or to enforce any company right of subrogation. This failure it is urged is a second and independent ground for denying any right of subrogation to the Lumbermens Mutual Casualty Company.
First, this court finds the argument of the plaintiff concerning funeral expenses inconclusive. The issue at hand is broad and complicated and cannot be resolved simply because the plaintiff failed to prove incurred funeral expenses or the fact that the court did not include in the charge to the jury a right *689 of recovery of funeral expense or the fact that the jury did not include in its verdict any sum for incurred funeral expenses.
The endorsement to the applicable policy for "added personal injury protection coverage — New York” was for "$3,000 additional Death Benefit.” (Italics added.) It was not as is implicit in the plaintiff’s argument for funeral expenses.
This court finds a marked difference in the meaning of an "additional death benefit” and "funeral expenses”. Funeral expenses are defined in the Surrogate’s Court Procedure Act to include "reasonable expense of a funeral, suitable church or other services as an integral part thereof, expense of interment or other disposition of the body, a burial lot and suitable monumental work thereon and a reasonable expenditure for perpetual care of a burial lot of the decedent.” (SCPA 103 [22].) While there may be some question as to whether all of the items contained in the definition recited are embraced in the right to recover "expenses — for the funeral of and a burial lot for decedent” in an action for wrongful death (see, query raised in PJI 2:320, and comment 1 NY PJI2d 683), it is nonetheless clear that the expense of the funeral and of the burial lot are wholly separate items to be added to the other pecuniary injuries determined as damages by a jury. (See, PJI 2:320.)
As to the endorsement sum in issue, viz., "$3,000 additional death benefit”, the court notes that section 5103 (a) (4) of the Insurance Law gives the following meaning to the term "death benefit” to wit: "a death benefit in the amount of two thousand dollars for the death of such person arising out of the use or operation of such motor vehicle which is in addition to any first party benefits for basic economic loss.” Since the endorsement in issue is stated to be "added personal injury protection”, this court concludes and holds that the term "$3,000 additional death benefits” means a benefit of $3,000 in addition to the $2,000 death benefit provided in the no-fault provision of the Insurance Law and is of the same character.
Turning now to the subrogation agreement, note is made that the rights of the insurance carrier to subrogation are not couched in the terms of "death benefit” or "additional death benefit”. Rather that agreement provides that the insurance carrier "is subrogated to the extent of any payment for additional first party benefits”. (Italics added.) There is thus posed the question of whether or not the "$3,000 additional death benefit” is an additional first-party benefit. This court answers this question in the affirmative.
*690 In support of the conclusion reached the court notes that "first party benefits” are defined in section 5102 (b) of the Insurance Law to mean "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less” (italics added). Three items not here applicable are set forth.
"Basic economic loss” referred to in the definition of "first party benefits” is itself defined in section 5102 (a) (4). That subdivision first provides that " 'Basic economic loss’ shall not include any loss incurred on account of death; subject, however, to the provisions of paragraph four of subsection (a) of section five thousand one hundred three of this article. ” (Italics added.)
The exception to the exclusion of loss on account of death from first-party benefits discloses nonetheless that there is included a "death benefit in the amount of two thousand dollars”. (Insurance Law § 5103 [a] [4].) In sum, the confusing, indirect, jangled, convoluted language employed in the drafting of the no-fault statute after pointedly excluding "death benefits” from "basic economic loss” and thus in turn from "first party benefits” ends up by an exception to the exclusion by including a death benefit of $2,000 as a "basic economic loss” and thus in turn a "first party benefit”.
We deal here, however, not with "first party benefits” but rather with "additional first party benefits” (italics added), for the right of subrogation here involved is couched in the latter phraseology. At this point the court abandons the statutory provisions of the Insurance Law dealing with no-fault benefits for the reason that "additional first party benefits” are not there defined. In truth, the only reference to the term "additional first party benefits” discovered in the Insurance Law is in the first sentence of section 5106 of the Insurance Law which deals with fair claims settlement. Under the no-fault statute it is stated "[pjayments of first party benefits and additional first party benefits shall be made as the loss is incurred.” (Insurance Law § 5106 [a] [italics added].) Such statutory language so far as giving meaning to "additional first party benefits” is useless, completely useless.
Surcease, however, is found in the Regulations of the Department of Insurance. Under a topic heading of "Additional First-Party Benefits” it is stated that "additional first-party benefits are payments equal to extended economic loss reduced by”. (Italics added.) There follow four items not here applica *691 ble. The regulations then continue by defining "Extended Economic Loss”. Included in the definition of "éxtended economic loss” is "an additional death benefit in the amount set out in the declaration”. (See, 11 NYCRR 65.13.)
The conclusion reached at the end of the definition trail set forth, concededly as winding as a chart of Magellan’s circumnavigation of the globe, is that the insurance carrier’s right of subrogation "for additional first party benefits” under its subrogation agreement is applicable generally to the "$3,000 additional death benefit” provided under its endorsement of added personal injury protection and previously paid to the plaintiff.
It is at this point that we arrive at the most difficult part of the motion at bar. Such difficulty stems directly from the absence of any definition of either a "death benefit” or more particularly an "additional death benefit.” As we have indicated earlier the only clue to the meaning of the terms is found in section 5103 (a) (4) of the Insurance Law which states that a death benefit is in the amount of $2,000 and is payable under the no-fault statute. Such definition defines only the quantum but not the essence of the term. Left unanswered in both the statutes and the regulations is the key question "for what is the death benefit paid?” Does it represent a balm of solace for the grief and remorse of the widow? Does it represent payment on account of loss of future earnings of the decedent? Does it represent payment towards funeral expenses? Does it represent medical aid and nursing expenses incident to the injury causing death? Or does it represent all of the above?
The answer to the question noted is necessary for the simple reason that not all of the damage suffered from a wrongful death of a decedent is compensable under the action for wrongful death in the State of New York. EPTL 5-4.3 is the statutory basis for an action for wrongful death. It permits a recovery for only "pecuniary injuries resulting from the decedent’s death”. It has long been held that pecuniary injuries do not embrace an award for sorrow, mental anguish, or injury to feeling or loss of companionship. In fact, the Pattern Jury Instruction includes a specific charge admonishing the jury that they are not to consider such items. (See, PJI 2:320.)
Yet it is to the proceeds recovered in an action for wrongful death that the Lumbermens Mutual Casualty Company asserts its rights under a subrogation agreement. Those proceeds *692 as earlier noted do not contain any award for funeral expenses. Neither do they contain any award for medical aid, nursing and attention incident to the injury causing death. The latter also was for the reason that no proof of such damages was presented and the charge of the court emitted them from jury consideration. In brief the verdict of the jury represents that body’s determination of pecuniary injuries, determined upon proof of earning capacity and lost wages; with collateral proof of course of the decedent’s character, age, health, life expectancy, record of past support of his distributees and their number and age and nothing more.
The rights of the insurer, Lumbermens, as subrogee are "to the rights of the applicant [Margaret Ingalls, widow and executrix] against any person because of bodily injury with respect to which additional personal injury protection benefits are afforded under the policy.”
Did Margaret Ingalls, as executrix of her husband’s estate, have a right to seek a recovery of the $3,000 additional death benefit in an action for the wrongful death of the decedent? This court answers the question in the negative — "no”, she did not have that right. The reason she did not have that right is that such payment would be either duplicative in whole or in part of the damage which she sought and proved in the action for wrongful death, e.g., lost wages. Or alternatively such payment would represent in whole or in part items of damage which were not compensable in such action, e.g., proof of loss of companionship. The unusual factual situation presented in the case at bar where no damages for funeral or nursing expenses were sought in the action for wrongful death merely points up the indefiniteness of the right of recovery of an "additional death benefit” in such an action.
Since as we have held, Margaret Ingalls does not have the right to seek such recovery, it follows as night the day, the subrogee carrier, standing in her shoes, does not have such right. In the opinion of this court a solution of the problem presented must rest with the Legislature. Until specificity is given to the term "death benefit” and "additional death benefit” the unresolved interrelation of receipt of such benefits with the right of anyone to seek such benefits in an action for wrongful death whether as representative of the decedent on behalf of the insurance carrier who paid the benefit, or that insurance carrier on its own behalf, must continue to be denied.
*693 Collateral to the reason stated for denying Lumbermens any right of subrogation to the verdict of the jury is a second and independent ground. It rests upon the ambiguity of the term of "additional death benefit” in the endorsement of the policy and ambiguity in the terms for subrogation in the subrogation agreement. Such ambiguity must be interpreted against the insurer and for the insured. See Scinta v Kazmierczak (59 AD2d 313, 316 [4th Dept 1977]) wherein after noting the absence of any judicial construction or clarification by Department of Insurance of an analogous term in the no-fault provisions of the Insurance Law the court stated: "In the absence of such clarification, ambiguities in the policy must be interpreted in favor of the insured. (Government Employees Ins. Co. v Kligler, 42 NY2d 863, 864-865; State Farm Mut. Auto. Ins. Co. v Westlake, 35 NY2d 587, 591.)”
There exists a third basis for denying subrogation rights to the defendant Lumbermens Mutual Casualty Company. It is the accepted rule that no right of subrogation arises in favor of a subrogee unless the loss of the principal has been paid in full. (See, American Sur. Co. v Gerold, 255 App Div 285, 287 [1st Dept 1938], citing McGrath v Carnegie Trust Co., 221 NY 92; American Sur. Co. v National Bank, 17 F2d 942; United States Fid. & Guar. Co. v Union Bank & Trust Co., 228 F 448; to the same effect, see, American Sur. Co. v Elec. Co., 296 US 133 [1935].)
As earlier noted the plaintiff in the action at bar has received less than one third of the verdict rendered in her favor. Even if one disagrees with this court and reached a contrary conclusion that the verdict recovered did, in fact, include the additional death benefit of $3,000, and was thus subject to the subrogation rights of the Lumbermens Mutual Casualty Company, the assertion of such right of subrogation must abide the time the plaintiff has been paid in full.
For each and all of the reasons stated the motion of the plaintiff brought under CPLR 5225 for payment or delivery of property of judgment debtor is granted in part as follows: the defendant Ohl & Tarrant, Inc., currently holding in its possession $3,000, is ordered and directed to pay over such sum to the plaintiff Margaret T. Ingalls as executrix of the estate of Dean B. Ingalls and except as so granted, the motion of the plaintiff seeking other and additional relief is denied.