AMERICAN SURETY CO. *v.* WESTINGHOUSE ELECTRIC MANUFACTURING CO. ET AL.

No. 12.   Argued October 17, 1935.—Decided November 11, 1935.

*Mr. Hugh H. Obear,* with whom *Messrs. Francis B. Carter* and *Charles A. Douglas* were on the brief, for petitioner.

*Mr. Edward H. Cushman,* with whom *Mr. William Fisher* was on the brief, for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A contract for drilling a well at the Naval Air Station at Pensacola, Florida, was made in November, 1930, between Melton J. Gray and the United States Government. It was drawn in the standard form. Payments were to be made in accordance with approved estimates during the progress of the work, but the contracting officer was required to retain 10% of the estimated amount "until final completion and acceptance of all work covered by the contract." The percentage might be reduced in stated contingencies. A bond was to be given for the protection of the Government and of persons supplying labor and materials. If thereafter a surety upon the

bond became unacceptable, the contractor was to furnish such additional security as might be required to protect the interests concerned.

The total contract price was $13,133.36. The bond which was executed by the contractor and by the petitioner as surety was in the penal sum of $3,940. The condition was that the principal, *i. e.*, the contractor, should perform the contract in all its terms, and in addition should "promptly make payment to all persons supplying the principal with labor and materials in the prosecution of the work." The additional obligation thus incurred is one exacted by statute. Act of August 13, 1894, c. 280, 28 Stat. 278; Act of February 24, 1905, c. 778, 33 Stat. 811; Act of March 3, 1911, c. 231, § 291, 36 Stat. 1167; 40 U. S. C. § 270. Laborers and materialmen, together with the Government, are obligees or beneficiaries of a bond so given (*Equitable Surety Co.* v. *United States*, 234 U. S. 448; *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376; *Brogan* v. *National Surety Co.*, 246 U. S. 257), though the claims, if any, of the Government are to have priority of payment. 40 U. S. C. § 270.

The contractor finished the work required by the contract, but did not make payment to all persons supplying him with labor and materials. Demand was made upon the surety, which paid into court $3,940, the full amount of the penalty, for distribution among the respondents in proportion to their interests. The payment did not satisfy what was owing to them for labor and materials furnished for the well. Thereupon conflicting claims arose to the ten per cent retained by the Government in accordance with the contract. On the one hand, the surety laid claim to this reserved percentage ($2,724.23) by right of subrogation, and also and with greater emphasis by force of a covenant of indemnity received from the principal at the beginning of the work. On the other hand, the reserved percentage was claimed by the re-

spondents on the ground that the effect of the statute, the contract and the bond, when read together, was to make the equity of the surety subordinate to theirs. Out of this equity there grew, as they contended, a right or an interest which, even if not a lien in the strict and proper sense, brought kindred consequences along with it. At least a court of equity would not come to the aid of one whose equity was subordinate until claims superior in equity had been satisfied in full.

By this time Gray was a bankrupt, and a trustee in bankruptcy was in charge of his affairs. The Government turned over the fund to the trustee, who held it to abide the order of the court. No claim to any part of it was put forward by the general creditors or by the trustee in their behalf. The controversy was solely between the materialmen on the one side and the surety on the other. Indeed there is nothing to show that any other creditors than these existed. The District Court, confirming a report of a referee, gave priority to the materialmen and made a decree accordingly. The Court of Appeals for the Fifth Circuit affirmed, one judge dissenting. 75 F. (2d) 377. A writ of certiorari brings the case here.

The materialmen were creditors of the contractor, their standing as such being unchallenged in the record or in argument. The contractor was under a legal duty at the time of his insolvency to pay their claims in full. This obligation would have been his apart from any bond, the debtor-creditor relation subsisting independently. As to materialmen in that relation, the statute and the bond did not add to the extent of the contractor's obligation, though they made it definite and certain. What their effect would be when applied to materialmen not creditors of the contractor is a question not before us. The obligation of the surety, however, unlike that of the contractor, was created solely by the bond and is limited thereby and by the equities growing out of the suretyship relation.

In any suit upon the bond, at least against the surety the nominated penalty was to be the limit of recovery. Upon payment of that penalty it was to be " relieved," in the words of the statute, "from further liability." 40 U. S. C. § 270.

Liability to pay was ended, but equities growing out of the suretyship relation survived in undiminished force. Acquittance under the bond did not leave the surety at liberty to prove against the assets of the insolvent principal on equal terms with the materialmen, still less to go ahead of them. The settled principles of the law of suretyship forbid that competition. *Jenkins* v. *National Surety Co.*, 277 U. S. 258, 266. A surety who has undertaken to pay the creditors of the principal, though not beyond a stated limit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full. This is the rule where the right to a dividend has its basis in the principle of equitable subrogation. "A surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." *United States* v. *National Surety Co.*, 254 U. S. 73, 76.* If the holding were different, the surety would reduce the protection of the bond to the extent of its dividend in the assets of the debtor. *Jenkins* v. *National Surety Co.*, *supra*. The rule is the same, and for like reasons, where the basis of the claim is the debtor's promise to indemnify, if the debtor is insolvent when the promise is enforced. *Jenkins* v. *National Surety Co.*, *supra*, at pp. 266, 267. Cf. *Springfield National Bank* v. *American Surety Co.*, 7 F. (2d) 44. " Wherever equitable principles are called into play, as they preëminently are in determining the

---

* Cf. *Peoples* v. *Peoples Bros.*, 254 Fed. 489; *Maryland Casualty Co.* v. *Fouts*, 11 F. (2d) 71; *McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92, 95.

rights and liabilities of sureties and in the distribution of insolvents' estates, they likewise forbid the surety to secure by independent contract with the debtor indemnity at the expense of the creditor whose claim he has undertaken to secure." *Jenkins* v. *National Surety Co., supra,* at p. 267. This is surely so unless the contract of indemnity has the effect of a specific lien. In the absence of such a lien the reserved percentages in controversy became assets available to creditors, the respondents along with others, upon the completion of the work to the satisfaction of the Government. Insolvency supervening, the surety must be postponed in the distribution of the assets to the remedies of any claimants who are members of the class of creditors covered by the bond.

The petitioner draws a distinction between a general promise to indemnify, which would be implied if not expressed, and a promise whereby a specific fund, whether in being or to arise thereafter, is set apart or earmarked as collateral security. We are told in effect that the displacement of a lien is an exercise of power more drastic and far-reaching than the marshalling of assets where there has been no agreement for a lien. The distinction might be important if the contest were between the surety and creditors not covered by the bond or between the surety and later assignees of the security so promised. *Prairie State Bank* v. *United States,* 164 U. S. 227; *Henningsen* v. *United States Fidelity & Guaranty Co.,* 208 U. S. 404. Such is not the situation here, even though we assume in aid of the petitioner that the promise to indemnify, obscure in its terms, is to be read as amounting to a specific appropriation of the percentages reserved or of any other assets. The contest in this cause is between the surety on the one hand and on the other hand creditors of the class it has undertaken to protect. At such times the position

of the surety is not bettered though the promise is directed to particular collateral, at all events where the bond is one required by the law. What considerations may govern after payment of the penalty in full where the bond is altogether a voluntary security we do not need to inquire. Cases such as *Keller* v. *Ashford,* 133 U. S. 610, 622; *Hampton* v. *Phipps,* 108 U. S. 260, 263; and *Moses* v. *Murgatroyd,* 1 Johns. Ch. 119, 129, though they suggest an analogy, do not control, even in principle, for there the surety was in default upon his obligation to the creditor. Slight differences in the facts may cause the equities to vary, and thus vary the result. What concerns us here is the remedy available where the bond has been given under the mandate of a statute. Equity then forbids that the statutory security be whittled down indirectly by any promise of indemnity, general or specific. Debtor and surety may not effectually agree that materialmen and laborers shall have less of the general assets as the price of their right to recover on the bond. Through the bond and the statute a new relation has been established with a new set of equities, not subject to destruction at the pleasure of the principal. The integrity of that relation is in the keeping of the law.

We have no occasion to consider to what extent the creditors of the bankrupt not covered by the bond are affected by the equities of creditors so covered or by those of the petitioner with the result that their claims are to be held subordinate thereto. Cf. *Prairie State Bank* v. *United States, supra; Henningsen* v. *United States Fidelity & Guaranty Co., supra.* As we have already pointed out, the record does not show that there are any general creditors, and if any such exist, they are not complaining of the decree. Our decision must be kept within the bounds of the controversy before us.

The decree of the Circuit Court of Appeals is accordingly

*Affirmed.*

Mr. Justice Roberts, dissenting.

The opinion of Judge Sibley in the court below, 75 F. (2d) 380, seems to me conclusive upon the propositions that neither the common law, the contract with the Government, nor the bond furnished by the contractor, give materialmen or laborers any right of lien upon the fund or preference in distribution thereof. I also agree with his view that the indemnity contract between the contractor and the surety company (even if an assignment of a claim for retained percentages against the United States were valid, in view of R. S. § 3477), is too vague to amount to an assignment of the retained percentages; and that the surety is not entitled to subrogation either to the rights of the United States or of the materialmen and contractors. I think it clear that, in the circumstances, the amount paid by the United States into the fund in the hands of the trustee in bankruptcy is general assets of the estate and that the surety company, as respects its claim for the amount paid under its bond, and the furnishers of material and labor, are general creditors entitled to no preference or priority over each other. I think the judgment should, therefore, be reversed.