**In re WATCO CORPORATION.***

**FRYER et al. v. WATCO CORPORATION et al.**

**No. 6365.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 4, 1938.

B. F. Saltzstein and Irving A. Puchner, both of Milwaukee, Wis., for appellants.

James E. Coleman and John S. Barry, both of Milwaukee, Wis., for appellee Watco Corporation.

Martin R. Paulsen, of Milwaukee, Wis., for appellees bondholders.

*Rehearing denied March 4, 1938.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This appeal is from a decree in a section 77B, Bankr.Act, 11 U.S.C.A. § 207, proceeding which denied appellants the right to participate in the reorganization proceedings as bondholders, disallowed their claims, and extinguished the bonds upon which their claims were based. Appellants had issued or guaranteed the bonds in question, but acquired them after they had been relieved of their liability by discharges in bankruptcy and after accelerated maturity of the bonds. The instant appeal was allowed by the District Court. A petition for leave to appeal, addressed to the discretion of this court, was denied.

The Facts: The C. M. & St. P. R. R. executed two long term leases, one to appellant Fryer, in 1926, and the other, in 1930, to Terminal Co. (controlled by Fryer). The leasehold interests were assigned, one to Schroeder Company, and one to Straus Co., as trustees, to secure two bond issues executed or guaranteed by Fryer, in the sum of $175,000 and $150,000, respectively. The Straus bonds were also secured by a second mortgage on the Schroeder building. The proceeds were used to build two warehouses which were used as a unit.

Foreclosure of these mortgages was instituted in 1933 and proceeded to a decree. In the fall of that year both Fryer and Terminal Co. were voluntarily adjudged bankrupts. Fryer was discharged in February, 1934. He acquired the bonds in question after his discharge.

The Terminal Co.'s assets were sold by its trustee in bankruptcy to Watco Company (debtor herein) and Ralco Co. (its subsidiary which is also being reorganized). Watco (and Ralco) filed its petition under 77B in November, 1936. The debtor has proposed a plan which has been approved.

Fryer purchased after his discharge, $22,600 of Straus bonds and $12,700 of Schroeder bonds. The Terminal Co. purchased $3,000 of Straus bonds.

It is the contention of appellants that:

1. Their discharge in bankruptcy forever relieved them of liability under their bonds and the subsequent purchase of the bonds put them on a par with other holders;

2. If contention (1) be refuted, they at least have discharged *pro tanto* a liability as surety and should to that extent be subrogated, and so should be given that classification and have a superior right to the debtor in the equity.

3. The plan of reorganization has not been properly arrived at or approved and is not fair in that it deprives bondholders of some of their security, in favor of debtor's stockholders.

It is appellees' contention:

1. Appellants' questions are not reviewable on this appeal which was allowed by the District Court.

2. Appellants should be allowed no claim as bondholders because of the Negotiable Instruments Law doctrine that purchase of an instrument by a maker extinguishes it.

3. Appellants should be allowed no claim as sureties by virtue of their part payment because they were doing only what they were morally and equitably bound to do, irrespective of their discharge in bankruptcy.

4. The plan is not unfair. The stockholders of debtor have put into the venture $42,500 of new funds and so are entitled to a share in the company.

A. *Method of Appeal.* Appellants are here solely by virtue of an appeal allowed by the District Court, having been denied leave to appeal by this court. We therefore do not have before us the issue of the fairness of the debtor's plan of reorganization, which has been approved. Meyer v. Kenmore Granville Hotel Co., 297 U.S. 160, 56 S.Ct. 405, 80 L.Ed. 557.*

The denial to appellants of the right to vote as bondholders is also an order relative to a proceeding in bankruptcy and is appealable only in the discretion of this court. Texas Hotel Securities Corporation v. Waco Development Co., 5 Cir., 87 F.2d 395.

The District Court referred the matter of claims and the plan to a master. The following is taken from the master's able report in his ruling on Fryer's claim upon the Schroeder and Straus bonds:

---

* 297 U.S. 160, at page 166, 56 S.Ct. 405, 407, 80 L.Ed. 557.

"Confirmation of a plan of reorganization is but a step in the administration of the debtor's estate, and, for reasons already stated, is an order in a proceeding in bankruptcy rather than a controversy arising in bankruptcy proceedings, and appeal lies only in the discretion of the appellate court. See Campbell v. Alleghany Corporation, [4 Cir.], 75 F.2d 947, 955."

"Mr. Fryer filed a claim on Schroeder bonds * * * of $12,700. He was the maker of these bonds and acquired the same after accelerated maturity. Terminal Warehouse Company had assumed the Schroeder mortgage. As between Mr. Fryer and Terminal Warehouse Company Fryer had become, in effect, a surety but was nevertheless absolutely liable on said bonds. A person absolutely liable on an instrument who acquires the same after maturity has in effect paid the instrument, and the instrument is extinguished except in so far as equity will keep it alive to enable said person to work out equities in the security or against other persons, who, rather than he, should have paid the instrument. He may exercise the rights of a holder only if, and to the extent that it would be equitable for him to do so. His intent in acquiring the instrument can not override the equities of the situation.

"His moral or equitable obligation to pay the instrument survives his bankruptcy, though he acquires thereby a legal defense to the enforcement thereof.

"Such equitable obligation was not destroyed by failure of the Circuit Judge to find Mr. Fryer personally liable after finding that he had received his discharge in bankruptcy. The entry of the foreclosure judgment did not destroy such equitable obligation. No foreclosure sale has been had, and hence no deficiency judgment has been entered. The bonds have not yet been merged in the judgment.

"If only one instrument were involved, or, if Mr. Fryer had acquired all of the bonds, equity would have kept said instrument, or said bonds, alive to enable him to work out his equities against the Terminal Warehouse Company which had assumed the mortgage and against the security for the bonds. In the present case Mr. Fryer seeks a share of the security for the bond issue and is attempting thereby to compete with other bondholders whom he has promised to pay, and who have not been paid in full. Equity will not permit such competition.

"Mr. Fryer contends that if he is not permitted to compete with other bondholders his bonds should at least receive a separate classification subordinate to the other bondholders, but superior to the debtor and its stockholders. If the security were adequate to pay off the other bondholders in full, leaving a surplus, such surplus should be subjected to Mr. Fryer's equities. The security, however, is inadequate even if the bonds of Mr. Fryer are eliminated from participation therein. Debtor is insolvent and its equity in the premises has no value. The new capital tendered by debtor's stockholders can not be subjected to Mr. Fryer's equities. It is the consideration for concessions made by bondholders, and protection for the new securities received by them.

"Wisconsin has construed section 117.-37(5) of its Negotiable Instruments Act as recognizing the equitable principles aforesaid in determining when an instrument has been discharged.

"I can find no reason why equity should keep alive the bonds purchased by Mr. Fryer. Said bonds therefore have been extinguished, together with any interest of Mr. Fryer in the security therefor. I, therefore, recommend disallowance of his claim."

In analyzing the position of appellants in the 77B reorganization proceedings the following facts are of controlling importance.

(1) Appellants were makers or guarantors of the bonds secured by the mortgage on the property, the equity of which was purchased by the debtor in these proceedings.

(2) Their liability upon the bonds was legally terminated by discharge in bankruptcy.

(3) The property which was security for the mortgage was insufficient to pay the other bondholders in full.

It is apparent that as to the other bondholders the appellants have no standing of parity. Appellants, as sureties, have no right to participate in the fund to which the obligees of the liability have a right, unless the fund be sufficient to pay the obligees in full, which it is not.

In the case of American Surety Co. v. Electric Co., 296 U.S. 133, 56 S.Ct. 9, 10, 80 L.Ed. 105, a surety company gave a bond to secure materialmen. The contractor did not pay all claims, and the surety paid to the full extent of his bond, but the claimants were nevertheless not paid in full. Upon the bankruptcy of the contractor, the unpaid materialmen and the surety presented claims against the fund which had been withheld by the Government, for whom the work was being done. The Court held that the surety had no claim to the fund while there remained still unpaid materialmen.

The surety claimed that inasmuch as it had satisfied its liability, it had a right by subrogation to share in the fund. The Court said:

"The contractor finished the work required by the contract, but did not make payment to all persons supplying him with labor and materials. Demand was made upon the surety, which paid into court $3,940, the full amount of the penalty, for distribution among the respondents in proportion to their interests. The payment did not satisfy what was owing to them for labor and materials furnished for the well. Thereupon conflicting claims arose to the 10 per cent. retained by the government in accordance with the contract. On the one hand, the surety laid claim to this reserved percentage ($2,724.23) by right of subrogation, and also and with greater emphasis by force of a covenant of indemnity received from the principal at the beginning of the work. On the other hand, the reserved percentage was claimed by the respondents on the ground that the effect of the statute, the contract, and the bond, when read together, was to make the equity of the surety subordinate to theirs. Out of this equity there grew, as they contended, a right or an interest which, even if not a lien in the strict and proper sense, brought kindred consequences along with it. At least a court of equity would not come to the aid of one whose equity was subordinate until claims superior in equity had been satisfied in full. * * *

"Liability to pay [by the surety who had paid the full amount of his bond] was ended, but equities growing out of the suretyship relation survived in undiminished force. Acquittance under the bond did not leave the surety at liberty to prove against the assets of the insolvent principal on equal terms with the materialmen, still less to go ahead of them. The settled principles of the law of suretyship forbid that competition. Jenkins v. National Surety Co., 277 U.S. 258, 266, 48 S.Ct. 445, 72 L.Ed. 874. A surety who has undertaken to pay the creditors of the principal, though not beyond a stated limit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full. This is the rule where the right to a dividend has its basis in the principle of equitable subrogation. 'A surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied.' * * * The rule is the same, and for like reasons, where the basis of the claim is the debtor's promise to indemnify, if the debtor is insolvent when the promise is enforced. * * * 'Wherever equitable principles are called in play, as they preëminently are in determining the rights and liabilities of sureties and in the distribution of insolvents' estates, they likewise forbid the surety to secure by independent contract with the debtor indemnity at the expense of the creditor whose claim he has undertaken to secure.' * * * Insolvency supervening, the surety must be postponed in the distribution of the assets to the remedies of any claimants who are members of the class of creditors covered by the bond. * * * Slight differences in the facts may cause the equities to vary, and thus vary the result."

We therefore conclude, on the authority of this decision, that appellants do not rank with the other bondholders in equality of rights, but that the equities must be weighed in determining the status of their claims.

Appellants urgently contend that they should be classed ahead of the stockholders of the company which is being reorganized, because the latter represent merely an equity inferior to the mortgages. This contention is fallacious because it disregards some of the important facts which are to be considered in the weighing of equities.

The stockholders agreed to furnish $42,500 new capital to be used in the payment of taxes and the fees allowed in the foreclosure decree and in the reorganization proceedings. The need of this money was absolute and imperative. Without it there could be no reorganization. Therefore, it was for the benefit of bondholders that the old stockholders be given something in exchange for this contribution of new money. It may be questionable whether the stock they received therefor is of value, but they have given something which in equity ought to receive recognition superior to that of the claims of the appellants. The old stockholders were not recognized because of their stock holdings, but because of their money contributions. In the reorganization, however, they were given an interest in the equity, and it may be that the extent of that interest was determined somewhat upon the basis of their holdings.

It must be apparent, however, that their contribution of $42,500 new capital was the real basis of their participation in the reorganization.

The court in the above quoted case stressed the necessity of considering equities in the application of the doctrine of subrogation. The equities in appellants' favor in the instant case are rather meagre. They purchased bonds which they had previously executed and guaranteed, but from which liability they had relieved themselves through a discharge in bankruptcy.

There is however another but closely allied reason which justified the court in rejecting appellants' objections to the proposed plan because of its failure to include them.

The fair value of the property did not equal the amount of the mortgage indebtednesses. Even when the appellants' mortgage holdings were eliminated, the bonded indebtedness exceeded the value of the property by nearly two to one. Under these circumstances no one was interested in the reorganization save the holders of the mortgage bonds whose lien was ahead of all other claims including stockholders' and the appellants'. In re 620 Church Street Bldg. Corporation, 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16. Such being the situation the court properly eliminated the appellants from consideration or participation in the reorganization plans. It would likewise have been justified in eliminating the stockholders. The advancement of $42,500 new capital was the basis for a re-entry of the stockholders into the picture. As such contributors they were entitled to consideration. The mortgagees could have made this contribution and thus kept the stockholders out. Likewise, the mortgagees who were the sole parties interested in the plan of reorganization, could have offered such inducement as they saw fit to such parties as were willing to advance the cash. This was the situation which confronted the bondholders. Their acceptance of the plan not only solved the problem before them, but happily included the old stockholders who happened to be the contributors of the life-saving cash advancements. The plan met with the approval of the court. It did not prejudice the appellants for one without an interest can not validly assert a prejudice.

The decree is

Affirmed.