In the Matter of **BUILDICE COMPANY,**
Incorporated, Bankrupt.
**No. 55 B 649.**

United States District Court
N. D. Illinois.
Dec. 11, 1956.

Harold J. Ross, Chicago, Ill., for petitioner.

R. Tieken, U. S. Atty., Nicholas G. Manos, Asst. U. S. Atty., Chicago, Ill., for the United States.

James Overton Brooks, Chicago, Ill., for receiver.

HOFFMAN, District Judge.

The United States Fidelity and Guaranty Company (hereafter referred to as the Surety) has filed its petition to review an order entered by the Referee in the matter of the bankruptcy of Buildice Company, Incorporated. The question raised by the petition is the relative priority of the United States of America (hereafter referred to as the United States) and of the Surety, claiming as subrogee of the United States, in the general assets of the bankrupt.

The facts which produced the controversy can be briefly stated. On March 11, 1954, Buildice Company, Incorporated, was indebted to the United States for withholding and employment taxes falling due before 1953 in the assessed amount of $33,782.18, and the United States had filed a lien for that amount. To release this lien, Buildice Company, as principal, executed a bond for the payment of these taxes and the petitioner joined in the bond as surety. After the delivery of the bond, Buildice Company made payments which reduced the debt to approximately $13,000. In March, 1955, Buildice Company was adjudicated a bankrupt.

In the bankruptcy proceeding the United States filed a claim for the $13,-000 remaining due under the bond and for additional withholding and employment taxes which had been assessed after the delivery of the bond. Some of the taxes claimed had fallen due before the bond was delivered; others had accrued subsequently. The claim totaled $46,699.02, and was made up of the following items:

(a) Taxes secured by the bond—
1. Withheld taxes, 12/31/52 ................. $     92.36
2. Withheld taxes, 3/31/53 .................   12,220.33

(b) Other taxes due *before* delivery of the bond—
3. Unemployment taxes, additional, for 1952 ....     238.85
4. Unemployment taxes for 1953 .............     907.64
5. Withheld taxes, 12/31/53 .................   13,750.80

(c) Taxes due *after* delivery of the bond—
6. Withheld taxes, 6/30/54 ...................   14,277.34
7. Withheld taxes, 12/31/54 .................    5,931.85

The basis of the claim in all respects was the priority of tax claims due the government; no claim based upon a lien for assessed taxes was made.

On November 2, 1955, the Surety discharged its obligation under the bond by paying to the United States the amount remaining due upon the taxes secured by it. Thereafter the Surety filed its claim in the bankruptcy, as subrogee to the United States, for the amount paid under the bond, and the United States amended its claim to eliminate those items paid by the Surety.

On April 26, 1956, the Surety filed its petition for the allowance of its claim as a prior tax claim, payable proportionately and in equal preference with the tax claims due the United States. The Surety has sought review of the Referee's denial of this petition.

The question presented was certified with clarity by the Referee:

"Where a Surety Company issues its bond to the United States guaranteeing the payment of certain taxes due the United States, and where thereafter the principal on said bond makes certain payments to the United States in the reduction of the principal's liability; and where thereafter the United States filed its priority tax claims against the principal bankrupt's assets, including the unpaid balance of tax which was secured by said bond, and thereafter the United States made demand upon the Surety for the payment of the unpaid balance of the taxes, which payment was guaranteed, and the Surety complied with said request and paid said balance, is the Surety entitled to be subrogated to the priority of the United States on account of such payment, and, if so, is it entitled to have its claim paid before the claim of the United States on account of other taxes has been paid in full?"

There is no dispute concerning the Surety's right to be subrogated to the priority of the United States to the extent of preceding the claims of other creditors. The Referee decided that as to claims inferior to the tax claims of the United States the Surety should enjoy priority, and no one has contested that determination. The sole controversy remaining concerns the relation between the claims of the United States and the Surety. The Surety claims to be entitled to proportional participation with the United States. The United States claims, and the Referee found, that the Surety is not entitled to any payment until after all of the United States' tax claim has been paid in full.

The Surety, in support of its claim to equal participation, relies upon two statutes. First Section 3468 of the Revised Statutes, 31 U.S.C.A. § 193, provides:

"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

The second statute relied upon is Section 57, sub. i, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. i, which provides:

"Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove and file such claim, such person may do so in the creditor's name and, if he

discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

It has been suggested that the first of these statutes, Section 3468, Revised Statutes, is intended to control if the surety's payment is made before the petition in bankruptcy is filed, while the second, Section 57, sub. i, of the Bankruptcy Act, controls if the surety's payment is made after the bankruptcy proceeding is begun. See 3 Collier on Bankruptcy, 290 (14th ed. 1941). But since both operate with the same effect upon the question at issue, it is unnecessary to decide which may govern.

Both of these statutes have been qualified in interpretation by the general principle of suretyship which forbids recovery by a surety upon a claim of subrogation until the full indebtedness secured by the bond has been satisfied. See Restatement of Security, § 141 (1941); Stearns on Suretyship, § 245, p. 430 (2d ed. 1915). In interpreting Section 3468 of the Revised Statutes, first quoted above, the Supreme Court has applied this general principle to deny equal participation with the government to a surety when the debt secured by the surety's bond has not been fully paid, despite the fact that the surety has paid the full sum for which it is liable under the bond. United States v. National Surety Company, 1920, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143. Similarly, in interpreting Section 57, sub. i, of the Bankruptcy Act, the Supreme Court has held that the surety may not share until the obligation secured by the bond is fully paid, even though the surety's liability is extinguished. American Surety Company of New York v. Sampsell, 1946, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663; American Surety Company of New York v. Westinghouse Electric Mfg. Co., 1935, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105. In the case last cited, this general principle was restated:

"A surety who has undertaken to pay the creditors of the principal, though not beyond a stated limit, may not share in the assets of the principal by reason of such payment until the debts thus partially protected have been satisfied in full." 296 U.S. at page 137, 56 S.Ct. at page 11.

Other applications of this principle may be found in United States Fidelity & Guaranty Co. v. Union Bank & Trust Co., 6 Cir., 1915, 228 F. 448; In re Hanson & Tyler Auto Co., D.C.N.D.Iowa 1922, 286 F. 161; In re Manhattan Brush Mfg. Co., D.C.S.D.N.Y.1913, 209 F. 997; In re Heyman, D.C.S.D.N.Y. 1899, 95 F. 800.

The Surety argues that the principle reflected in these decisions does not control the question here presented. In all of the cases cited the debt which the surety had guaranteed remained unsatisfied in part. Here the taxes secured by the Surety's bond have been paid in full, and it is the Surety's standing with respect to *other* debts due the creditor that is in issue. In this situation the Surety submits, the principle has no application.

Underlying the principle which denies subrogation to the surety before full payment of the debt secured are the reasonable expectations of the creditor protected by the bond. When the creditor enjoys the guarantee of a surety bond as to a part of the debt, he may fairly rely upon the general assets of the debtor for the portion of the debt not secured. If the surety were permitted to share in these general assets to the prejudice of the creditor, and to reduce the creditor's recovery by participating equally in competition with the creditor, the full obligation of the surety would not be realized. The allowance of subrogation is governed by considerations of equity and good conscience. These considerations dictate that the creditor's claim should not be prejudiced or reduced by virtue of the bond obtained for a part. As stated in the case of In re Hanson & Tyler Auto Co., D.C. N.D.Iowa 1922, 286 F. 161:

" * * * In the instant case petitioner, who was the original creditor guaranteed, was not paid his full claim, but only a part, and so far as appears from the record, were he permitted to receive the dividends upon the full amount of his original claim, there would still be a balance unpaid. In such circumstances to reduce petitioner's claim to the extent of the guaranty paid and permit the guarantor to prove for the amount so paid would deprive petitioner of a part of his security and impair the obligation of his contract with the guarantor." 286 F. at page 162.

■ In view of this justification for the principle denying subrogation when the full debt has not been paid, there is no warrant for distinguishing between an unpaid and unsecured portion of the debt secured in part on the one hand and a distinct and different debt already accrued at the time of the surety's undertaking on the other. In either case the creditor may be expected to rely upon the general assets of the debtor to respond for so much of the total indebtedness as is not secured by the surety's bond. In either case, to permit subrogation before full payment of all indebtedness existing at the time of the surety's undertaking would impair the obligation of the surety by reducing the creditor's recovery from the general assets.

For these reasons the general principle denying subrogation has been' applied, regardless of the fact that the full indebtedness secured has been discharged, where there remains unpaid some other indebtedness which existed at the time the surety entered into the guarantee. Thus where collateral has been pledged to secure two separate debts, and the surety has guaranteed only one of the debts, either in whole or in part, the surety is not entitled upon satisfaction of the debt he secured to a right in the collateral by way of subrogation; both debts must be paid before he may participate. National Bank of Commerce v. Rockefeller, 8 Cir., 1909, 174 F. 22; Hudson Trust Co. v. Cushman, 1918, 93 Conn. 119, 105 A. 344; Restatement of Security, § 141 (1941).

■■ It follows, under the general principles of suretyship which qualify the statutes relied upon by the Surety, that the Surety's right of subrogation must be postponed until the indebtedness to the United States due when the Surety's undertaking was made has been satisfied. The items included in the United States' claim which represent taxes accrued and unpaid on March 12, 1954, the date of the bond, must accordingly first be paid. These include the additional unemployment taxes for 1952, unemployment taxes for 1953, and withheld taxes due for the period ending December 31, 1953, as set forth as items numbered 3, 4 and 5 in class (b) in the chart hereinbefore set out. To this extent the order of the Referee will be affirmed.

Different considerations are called into play by the taxes which accrued after the Surety's bond was delivered. The principles which deny subrogation before existing debts are paid stop short with the limits of their justification. The Surety's obligation to assume, as between creditor and surety, the risk of the debtor's insolvency does not extend to future indebtedness not within the contemplation of the parties, and there is no impairment of the Surety's undertaking when subsequent and junior claims are reduced by subrogation. In such a situation, there are no reasonable expectations of the creditor which are disrupted; it is rather the Surety who may reasonably expect that, once the existing indebtedness to the creditor is discharged, he will no longer be prejudiced by the undertaking to assure.

Authority upon the point seems to be limited to cases involving the surety's right to security, in the form of personal collateral or of a mortgage, given by the debtor to assure the same debt guaranteed by the surety, and pledged after the surety's undertaking to the same creditor for additional and subsequent obligations. In this situation, it is held that

the surety need only discharge the obligations existing at the time of his undertaking in order to be subrogated to rights in the security; it is not a condition to the surety's rights that the subsequent and independent debts be paid. National Exchange Bank of Lansingburgh v. Silliman, 1875, 65 N.Y. 475; Schell City Bank v. Reed, 1893, 54 Mo.App. 94; Forbes v. Jackson, Law. Rep., 19 Ch.Div. 615, 21 Eng.Rul.Cas. 607 (1882); Stearns on Suretyship, § 250, pp. 445–47 (2d ed. 1915). In Arant on Suretyship (1931), the author states the general rule that a surety has no right by subrogation to the creditor's security, when it also secures other debts of the principal, so long as any of the other debts remain unpaid, and follows with this qualification: "But, if the other secured debts are contracted after the surety's promise, the surety is not required to pay them before his right of subrogation arises."

Under this general principle of suretyship, the obligations which accrued after the Surety's undertaking raise no impediment to subrogation. It follows that after the payment of those taxes which had already accrued before the Surety delivered its bond, the Surety is entitled to be subrogated to the tax priority status enjoyed by the United States under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. With these subsequent claims, the claim of the Surety is entitled to proportional participation in the dividends.

This result in no way undermines or abridges the priority given to government tax claims under either Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, or Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191. By paying the taxes due, the Surety becomes entitled to enforce the tax claim, but the nature of the claim is not changed. It remains a tax claim, entitled to priority as such, along with other tax claims remaining to the taxing authority. In re Ingersoll Co., 10 Cir., 1945, 148 F.2d 282. For purposes of determining the priority, the fact of subrogation is ignored. Thus if the United States claims as subrogee to a debt owed some private person, the nature of the claim is not affected, and the United States enjoys no higher priority than its subrogor. United States v. Marxen, 1939, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222; In re Miller, 2 Cir., 1939, 105 F.2d 926.

The case of Standard Accident Ins. Co. v. United States, 1951, 119 Ct.Cl. 749, 97 F.Supp. 829, relied upon by the United States, is not in point. There the controversy involved not the surety's right to participate in the estate of a bankrupt, or in any appropriated sum, but rather the surety's claim to enforce a debt owed by the government to the principal in disregard of offsetting debts owed by the principal to the government. The decision turned upon a matter of set-off, and has no application here.

An order will be entered modifying the order of the Referee and granting the petition of the Surety to participate proportionately with the United States after the full payment of all taxes due on March 12, 1954.

Counsel are directed to confer, prepare a draft order in keeping with the views herein expressed and submit the same for the signature of the court on or before December 17, 1956.