## In re SOUTHWEST EQUIPMENT RENTAL, INC.

### No. 1:94–CV–483.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Jan. 23, 1996.

---

3. *Thomas W. Garland, Inc. v. Union Electric Co.* (*In re Thomas W. Garland, Inc.*), 19 B.R. 920 (Bankr.E.D.Mo.1982).

C. Douglas Williams, Stophel & Stophel, P.C., Chattanooga, TN, for John A. Stefaniak.

Shelley D. Rucker, Miller & Martin, Chattanooga, TN, for Southwest Equipment Rental, Inc.

Gary R. Patrick, Cara J. Alday, Patrick, Beard & Richardson, P.C., Chattanooga, TN, for C. Kenneth Still, Trustee.

## *MEMORANDUM*

COLLIER, District Judge.

This is an appeal by appellant, John A. Stefaniak (Stefaniak) from an October 14, 1995 oral decision (the decision) by the United States Bankruptcy Court for the Eastern District of Tennessee (Stinnett, J.) concerning two claims Stefaniak made in the Chapter 7 bankruptcy matter of Southwest Equipment Rental, Inc. (Southwest).

Because J. Stinnett's order was a final decision as to Stefaniak's rights, this Court has jurisdiction to consider this appeal. 28 U.S.C. § 158.[1]

In determining Stefaniak's claims, the Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard, but conducts a *de novo* review of the Bankruptcy's Court's conclusions of law. Fed.R.Bankr.P. 8013; *In re Isaacman,* 26 F.3d 629, 630 (6th Cir.1994); *Harbour Lights Marina v. Wandstrat,* 153 B.R. 781 (Bankr. S.D.Ohio 1993). However, matters within the discretion of the Bankruptcy Court may be overturned only for an abuse of discretion. *Fed.R.Bankr.P.* 8003; *American Imaging Services, Inc. v. Eagle–Picher Industries, Inc. (In re Eagle–Picher Industries, Inc.),* 963 F.2d 855, 858 (6th Cir.1992). *Accord Investors Credit Corp. v. Batie,* 995 F.2d 85, 88 (6th Cir.1993).

## I. *FACTS*

The record in this case reveals the following material facts. On October 14, 1994, Judge Stinnett held a full evidentiary hearing on the issues involved in this case.

Southwest was a trucking corporation headquartered in Chattanooga, Tennessee. Stefaniak was a vice-president and director of Southwest, and was also an officer, director and stockholder in Southwest's holding company, Thiele–Rogers, Inc., prior to the filing of Southwest's bankruptcy petition. Stefaniak played an active role in the management of Southwest. William R. Thiele was the president of Southwest, and an officer, director and stockholder of Thiele–Rogers, Inc. Before November 2, 1984, Southwest was owned by Clyde and Elizabeth Fuller (the Fullers). Thiele negotiated with the Fullers to purchase Southwest. Prior to this purchase, Stefaniak was involved in developing various financial proposals for Thiele to support the financing of the acquisition of Southwest stock.

The purchase was a leverage buyout for the stock of Southwest. The purchase, in large part, was secured by the assets of Southwest. Thiele–Rogers was the acquiring entity. Exchange National Bank of Chicago was the initial primary lender. Subsequently, Congress Financial Corporation (Southwest) (Congress) assumed that role and became Southwest's major lender. Thiele–Rogers did not have sources of income other than Southwest to repay the loans used to make the purchase.

Stefaniak was a sophisticated businessman, with a Bachelors Degree from Cornell University, and an MBA from Columbia University. He had spent considerable time in the trucking industry serving in responsible positions. He was involved in the analysis of acquisitions, in corporate planning, and treasury functions of Hertz Corporation and its successor, Hertz–Penske, and later just Penske. Stefaniak had knowledge of the possible acquisition of Southwest and participated in the plans to acquire Southwest.

Shortly after the purchase, Southwest became overdrawn in its accounts. Within three months, its overdrafts in its banks was approximately $500,000. Southwest had significant cash flow problems from the time of

---

1. Section 158 provides in pertinent part:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees....

the sale onward. An expert witness testified at the hearing that Southwest was undercapitalized from the time of the purchase and was in effect insolvent.

Stefaniak received a personal loan from Summitt and Elizabeth Trust Company of New Jersey in April 1987. This loan was for approximately $250,000. This loan was taken out to pay a debt of Southwest owed to Great Dane Trailers. Stefaniak therefore became an unsecured creditor of Southwest. Stefaniak secured the loan by pledging stock he owned in Eli Lilly and Company. In June 1987, Southwest borrowed money from Congress Financial (Congress). Southwest secured this loan by a pledge of assets. Some of the money from this loan paid off Stefaniak's personal loan with Summitt and Elizabeth Trust. Stefaniak agreed to guarantee the Congress loan by a limited guarantee and waiver up to a maximum amount of $500,000 plus costs and attorneys' fees. Stefaniak executed a stock pledge agreement and an irrevocable stock power and assigned the shares of stock that he owned in Eli Lilly and Company. Internal records of Southwest regarding its loan position with Congress did not show an increase in its borrowing capacity with Congress at or near the time of this loan.

On January 8, 1988, Southwest filed a Chapter 11 petition in bankruptcy. Stefaniak participated in the decision to file for bankruptcy protection. Shortly thereafter, on March 8, 1988, the Chapter 11 was converted to a Chapter 7. After the filing of the bankruptcy petition, Southwest obtained post-petition financing from Congress, which was also guaranteed by Stefaniak to the extent of the limited guarantee and waiver already in Congress' possession. Congress was repaid all of its post-petition financing by Southwest. Pursuant to an amended proof of claim, as of November 30, 1991, Congress contended it was still owed a pre-petition debt of $695,494.35.

Exercising its rights under the limited guarantee and stock pledge agreement, Congress, after the filing of the bankruptcy petition of Southwest, filed suit against Stefaniak and obtained a court judgment in July 1989, in the amount of $554,449.01. This included costs and attorney's fees. Congress, thereafter, sold the Eli Lilly stock held as collateral for the limited guarantee and received the amount of its judgment.

On June 22, 1988, Stefaniak filed two proofs of claim against the Southwest bankruptcy estate. Claim No. 6879 was filed in the amount of one million dollars, seeking payment of amounts for which Stefaniak may have been liable to Congress. Claim No. 6880 was filed in the amount of $12,205.30 for alleged unpaid vacation, unpaid sick leave, and unpaid medical expenses, arising out of appellant's employment by Southwest. By order dated March 8, 1988, the Bankruptcy Court set June 6, 1988 as the last date for filing proofs of claim. Although represented by counsel, Stefaniak personally filed these two claims.

Stefaniak took an active role in the pursuit of his claims. He personally filed the claims. He also objected to the payment of wage claims of Southwest employees and appeared *pro se* at a hearing on those claims and contested them.

On November 29, 1991, the Bankruptcy Court ordered Stefaniak to amend his original claims within thirty days. Stefaniak's amended proof of claim No. 6879 was not filed until January 3, 1992, five days after the bar date. Stefaniak testified at the hearing that he had completed the amended proof of claim and submitted it to his counsel for filing on or about December 26, 1991. His attorney was absent from his office on that date and an associate had been assigned the responsibility to handle the filing. However, this associate was sick and was out of the office from December 26, 1991 until January 3, 1992. No amended claim No. 6880 was submitted.

## II. ISSUES ON APPEAL

The trustee in bankruptcy filed objections to Stefaniak's claims. Following the adversary hearing, the Bankruptcy Court allowed the claims as late-filed claims but equitably subordinated them. The Bankruptcy Court refused to allow Stefaniak to subrogate Congress' claim. Evidence was presented at the hearing that Stefaniak and Thiele agreed to

accelerate payments to certain creditors (Morris County Savings Bank), but the payments were not accelerated. In bringing this appeal, Stefaniak raises the following issues:

1. Whether the Bankruptcy Court properly treated the claims filed by Stefaniak as late-filed claims. Stefaniak contends that his claims should be allowed as timely-filed either

 (a) on the basis of excusable neglect, or

 (b) on the basis of informal claims filed with the court and the Chapter 7 trustee prior to the deadline set for filing claims.

2. Whether the Bankruptcy Court erred in determining that Stefaniak's claim, No. 6879, as amended, should be equitably subordinated under 11 U.S.C. § 510(c).

3. Whether the Bankruptcy Court erred in refusing to allow Stefaniak to succeed to the position of Congress Financial Corporation under the doctrine of subrogation as set forth in 11 U.S.C. § 509, and

4. Whether the Bankruptcy Court erred in refusing to allow a partial transfer to appellant of the claims held by Congress Financial Corporation.

## III. *ANALYSIS*

### A. *Late–Filed Claims*

■ Appellant relies heavily on the recent Supreme Court decision of *Pioneer Investment Services Co. v. Brunswick Assoc.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer Investment,* the Supreme Court addressed the meaning of the term "excusable neglect" as found in Rule 3003(c) of the *Fed.Rules Bankr.P.* The Bankruptcy Court concluded that *Pioneer Investment Services* was of no assistance to the appellant because this case is a Chapter 7 case and *Pioneer Investment Services* involved a Chapter 11 proceeding. The Bankruptcy Court is correct. In fact, in *Pioneer Investment Services* itself, the Supreme Court made this very distinction. It said:

> The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules differentiation be-

tween Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for a reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.

507 U.S. at 389, 113 S.Ct. at 1495.

Stefaniak argues the decision in *Pioneer Investment Services* should be followed because there was no meeting of creditors in this case. However, appellant fails to provide the Court with any authority in support of its position. In this case, the filing deadline was clearly announced by the Bankruptcy Court in its March 8, 1988 and in its November 29, 1991 orders. It is also clear that the appellant personally knew of this deadline. Stefaniak took an active role in the litigation, he filed his original proofs of claim himself, and he completed the claims before the deadline. He just neglected to ensure the claims were filed on time.

■ Even accepting appellant's position that *Pioneer Investment* applies in this case, excusable neglect has not been established. As stated in the Sixth Circuit Court of Appeals in *Duncan v. Washington,* 1994 WL 232397 (6th Cir. May 27, 1994), although the standards have been relaxed since *Pioneer Investment,* they have not been abolished. *Id.* at *3. The Bankruptcy Court did not abuse its discretion nor did it misapply the law.

■ Stefaniak also argues even if the "excusable neglect" standard is not met, his claim should be allowed as an informal claim based upon his contention the trustee and the Bankruptcy Court were on notice of his claims through his objections to payments by the trustee in April and May of 1988. This argument must also fail. An informal proof of claim must be substantially similar to a formal claim. *In re Internat'l. Horizons,* 751 F.2d 1213, 1217–18 (11th Cir.1985). *In re McCoy Management Serv., Inc.,* 44 B.R. 215, 217 (Bankr.W.D.Ky.1984), sets out five elements necessary for a valid informal proof of claim. One, it must be in writing; two, it must contain a demand by the creditor on

the debtor's estate; three, it must express an intent to hold the debtor liable for the debt; four, it must be filed with the Bankruptcy Court; and five, the facts of the case must make allowance equitable. This five-part test has gained widespread acceptance. *In re Constance Dietz*, 136 B.R. 459, 463–64 (Bankr.E.D.Mich.1992).

There is no evidence in the case establishing that Stefaniak met any of these elements by his objections to proposed payments by the trustee in April and May of 1988. Stefaniak, in raising these objections, was concerned the bankrupt estate might be diminished. He has given the Court no basis on which to reverse the Bankruptcy Court on this issue.

### B. *Equitable Subordination*

■ The Bankruptcy Court held that Stefaniak's claims would be subordinate to the claims of timely-filed, unsecured creditors pursuant to 11 U.S.C. § 510(c). The Bankruptcy Court found the result urged by Stefaniak would be inequitable to creditors of Southwest, particularly in light of Stefaniak's education, financial skill, and his ability to manipulate the accounts of Southwest prior to the petition in bankruptcy. The Court noted evidence in the record regarding the background of the appellant, the means and methods by which Southwest was acquired, and the financial difficulty that Southwest experienced immediately after its acquisition.

The Bankruptcy Court also found Stefaniak had allowed an unsecured debt Southwest owed to Stefaniak to be converted to a secured debt Southwest owed to Congress, thereby converting Stefaniak's debt from an unsecured debt to a secured debt and that such action was inequitable.

■ Equitable subordination is justified if the following three conditions are met: one, that claimant engaged in inequitable conduct; two, the misconduct resulted in injury to the creditors or conferred an unfair advantage on the claimants; and three, equitable subordination of the claim would not be inconsistent with the provisions of the bankruptcy code. *Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2

F.3d 128, 130–31 (5th Cir.1993) (citing *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977)). The Bankruptcy Court was required to consider Stefaniak's role as an insider and fiduciary of Southwest. As such, his claims are subject to rigorous scrutiny by the Court. Less egregious conduct by an insider may support equitable subordination. *In re Herby's Foods, supra* at 131; *Allied Eastern States Maintenance Corp. v. Miller (In re Lemco Gypsum, Inc.)*, 911 F.2d 1553 (11th Cir.1990). Stefaniak was found to be an insider by the Bankruptcy Court.

■ Inequitable conduct encompasses (1) fraud, illegality, breach of fiduciary duty; (2) undercapitalization; and (3) the claimant's misuse of the debtor corporation as a mere instrumentality or alter ego. *In re Herby's Foods, supra* at 131. *In re 80 Nassau Associates*, 169 B.R. 832 (Bankr.S.D.N.Y.1994).

Based on the evidence adduced at trial, it is clear that Southwest was undercapitalized and experienced significant financial difficulties from the time of its acquisition. These difficulties resulted in part from the manner by which Southwest was purchased.

The Bankruptcy Court could also have determined that as a result, in part, of the undercapitalization of Southwest, creditors of Southwest were injured. As a result of its undercapitalization, Southwest had difficulty paying its debts as they became due and ultimately, became insolvent. Appellant, through his role as an officer and director of Southwest, improved his position at the expense of other creditors by converting unsecured debt to secured debt. The Bankruptcy Court would have been free to conclude that appellant's actions resulted in injury to other creditors and conferred an unfair advantage on appellant. When considering the plight of the employees of Southwest, this injury is very clear.

Appellant has not pointed to anything in the bankruptcy code which would show equitable subordination of his claim would be inconsistent with the provisions of the bankruptcy code.

## C. *Subrogation of Congress' Claims*

■ The Bankruptcy Court disallowed appellant's request that he succeed to the position of Congress. The court found that Stefaniak was not entitled to subrogation since the debt of Southwest owed to Congress was not paid in full. Appellant argues that section 509(a) of the Bankruptcy Code does not require payment in full in order to be subrogated.

Section 509 provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditors to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

(A) allowed under section 502 of this title;

(B) disallowed other than under section 502(c) of this title; or

(C) subordinated under section 510 of this title; or

(2) or between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor on allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

A close reading of § 509 shows that appellant's position is inaccurate. Section 509(a) contains language clearly indicating that the debt must be paid in full. Stripped to its essentials, § 509 as it applies here reads, "... an entity that is liable with the debtor on ... a claim of a creditor ... and that pays such claim, is subrogated to rights of such creditor to the extent of such payment."

■ This language means if a co-debtor pays the remainder of a larger debt, thus extinguishing the debt, the co-debtor steps into the shoes of the creditor to the extent of his payment. Obviously, the co-debtor should not be entitled to claim more than it paid. *In re Dan–Ver Enterprises*, 86 B.R. 443 (Bankr.W.D.Pa.1988).

■ Moreover, 11 U.S.C. § 509(c) provides that any subrogation rights of the subrogee shall be subordinated to the primary creditor "until such creditor's claim is paid in full." The facts are undisputed that Congress never received full payment of its prepetition debt. The Bankruptcy Court was correct that subrogation requires payment of the full debt. *McGrath v. Carnegie Trust Co.*, 221 N.Y. 92, 95 116 N.E. 787, 788 (1917) (cited by *Pandora Industries, Inc. v. Paramount Comm., Inc.* (*In re Wingspread, Corp.*)), 145 B.R. 784 (S.D.N.Y.1992). *See also In re Flores de New Mexico, Inc.*, 134 B.R. 433 (Bankr.N.M.1991) (citing *Amer. Surety Co. v. Westinghouse Elec. Mfg. Co.*, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105 (1935)).

■ However, appellant asserts that he is entitled to subrogation aside from § 509. He argues that under the doctrine of equitable subrogation he should be able to step into the shoes of Congress. In support of his position, appellant cites *In re Spirtos*, 103 B.R. 240 (Bankr.C.D.Cal.1989); and *Matter of Agrownautics, Inc.*, 125 B.R. 350 (Bankr. D.Conn.1991).

■ Appellant is correct that equitable subrogation is separate and distinct from subrogation rights afforded by § 509. However, even under equitable subrogation, there is a requirement the debt be paid in full.

■ Under equitable subrogation, the following requirements must be met:

(1) payment must have been made by subrogee to protect own interest;

(2) subrogee must not have acted as a volunteer;

(3) debt paid must be one for which subrogee was not primarily liable;

(4) entire debt must have been paid;

(5) subrogation must not work any injustice to rights of others.

*In re Flick,* 75 B.R. 204 (Bankr.S.D.Cal. 1987).

 Subrogation is an equitable remedy. It is not an absolute right but a remedy which depends on equities and attending facts and circumstances of each case. *Id.* Under equitable subrogation, Stefaniak's claims must fall. He did not pay the entire debt of Southwest. And, under the equities of the circumstances of the case, it would not be fair and just to allow him to step into the shoes of Congress.

### D. *Partial Transfer of Congress' Claim*

 The Bankruptcy Court denied appellant's motion to transfer a portion of the claim of Congress to appellant. The court based this determination upon a finding that Congress had nothing left to transfer. As a result of a compromising settlement between Congress and the trustee, all issues were settled whereby the trustee agreed to pay to Congress approximately $150,000 in settlement of some $695,494.35 in claims that Congress had against the bankruptcy estate, and the trustee agreed to settle claims it had against Congress. This settlement extinguished any claim that Congress had against Southwest.

### IV. *CONCLUSION*

Having considered the record in this case, the arguments of the parties, and the applicable law, the Court will **AFFIRM** the decision of the Bankruptcy Court.

An Order will enter.